STEWART, tax-collector, *v.* ANDERSON *et al.,* commissioners.

ARMISTEAD, tax-receiver, *v.* ANDERSON *et al.,* commissioners.

WILKINSON, ordinary, *v.* ANDERSON *et al.,* commissioners.

1. The act of August 22, 1911 (Acts 1911, p. 186), touching the salaries of certain county officers, while employing certain general terms, is so hedged about with provisions, restrictions, and limitations, that it is in reality a special act; and being in regard to a subject for which provision had previously been made by an existing general law, it is invalid.
2. The act being unconstitutional, it was error to grant a mandamus to

. compel certain officers of Fulton county to file reports with the county commissioners, as therein provided.

MAY 15, 1913.

Mandamus. Before Judge Pendleton. Fulton superior court. December 13, 1912.

The Commissioners of Roads and Revenues of Fulton . County instituted three separate actions against A. P. Stewart, tax-collector, J. R. Wilkinson, ordinary, and T. M. Armistead, tax-receiver, of Fulton County, seeking the writ of mandamus to compel each of them to file detailed statements of the number of assistants needed and the amounts necessary to be expended for deputies, assistants, bookkeepers, clerks, and other employees of his office for the year 1913, as provided in section 5 of the act of August 22, 1911 (Acts 1911, p. 186). The defendants severally answered, setting up that the act of the legislature requiring such statement was unconstitutional and void, and specifically setting forth wherein it was contended that the act was unconstitutional. On the hearing the cases were presented in such manner as to make the ruling dependent upon the constitutionality of the act. In each instance the judge granted a mandamus absolute as prayed, thereby holding in effect that the act was not subject to any of the attacks made upon it. The defendants severally excepted to the judgment. All the cases were heard in the Supreme Court together, and are considered together.

*J. D. Kilpatrick* and *Little & Powell,* for plaintiffs in error.

*L. Z. Rosser* and *Hooper Alexander,* contra.

ATKINSON, J. (After stating the foregoing facts.) It is declared in art. 1, sec. 4, par. 1, of the constitution (Civil Code, § 6391), that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." A general law may be repealed or modified by another general law, but it can not be repealed or modified by a special or local law. If the act under consideration is a general law, it is valid as against the contention that it violates the section of the constitution above quoted. If it is a special or local law dealing with a subject as to which provision has already been made by an existing general law, then it is in conflict with that section and invalid. The question, therefore, is whether the act under con-

sideration is a general or a special law. Has it uniform operation throughout the State? It does not purport to apply to all counties in the State, but only to such as meet a certain description. The legislature may make classification for purposes of legislation and pass general laws with reference to such classes. They may classify counties. The basis of classification must have some reasonable relation to the subject-matter of the law, and must furnish a legitimate ground of differentiation. Mere arbitrary discriminations are not permissible under the constitution. If a legitimate classification is made with respect to persons, the law must be applicable to all persons within the class or coming within the class. If the classification is sought to be made with reference to counties, and the basis of classification is legal, the law must apply to all counties within the class, or which may come within the class. The legislature could not constitutionally classify one county by itself. There must be some reasonable basis of classification, so that all which fall within the class may come within the scope of the provisions of the law. Although the act may purport to make a classification of counties for purposes of legislation, yet if the so-called class is so hedged about and restricted that the act applies to only one county, and that other counties coming within the class provided can not also come within the purview of the law, it is in fact a local or special act and not a general one. See *Worth County* v. *Crisp County*, 139 *Ga.* 117 (76 S. E. 747); *Vaughn* v. *Simmons*, 139 *Ga.* 210 (76 S. E. 1004); *Futrell* v. *George*, 135 *Ga.* 265 (69 S. E. 182). In the *Worth County* case the act considered by this court purported to be a general one in regard to changing the dividing line between two counties, as to which subject-matter a general law already existed. The act provided that where there are two contiguous counties, and according to the last United States census one of them has a population of not less than 16,422 nor more than 16,424, and the other has a population of not less than 19,146 nor more than 19,148, the dividing line between them may be changed in the manner therein pointed out. According to the last United States census, before the act was adopted, only the counties of Worth and Crisp had such populations as would render it applicable to them. It will be perceived that the act allowed a margin of only three as to the population of each county. While shaped in the form of a general act, it was palpable that the possi-

bility of there being two other contiguous counties which would ever have populations respectively within those limitations was so remote as to form no basis for a reasonable classification, and that in effect the act applied to those two counties alone. It was accordingly held to be a special act, and unconstitutional. In the case of *Vaughn* v. *Simmons,* an act which sought to create a special school district, where there was a general law providing the manner of such creation, was held invalid, although it sought to accomplish that purpose by declaring the school district to be an incorporation. In the case of *Futrell* v. *George,* there was an attempted classification of counties having a population of between 7,000 and 8,000, or of between 13,700 and 14,000, or of between 16,000 and 21,000, as shown by the United States census for 1900, and it was sought to vary the general road law by such an act. It was patent that the description included only a few counties under the census of 1900, and that other counties which might at any time thereafter have a population within the limitations stated could not come within the provisions of the act. It was accordingly held unconstitutional.

Applying these tests to the present act, could it properly be called a general law, or is it a local or special one? The sole basis of classification mentioned in the act is that of population. It purports to make a class of all counties having a population of 100,000 by the last census or any future census. We think that the population of a county bears such a legitimate relation to the amount of work which county officers do, and to the compensation which they receive by way of fees therefor, as to furnish a reasonable basis for a classification relatively to the constitutional requirement of generality which is now being considered. But having specified a population of one hundred thousand as the basis of the classification, the legislature did not stop there, but proceeded to hedge the act about with so many provisions, restrictions, and limitations that it not only excluded counties which might possess the alleged basis of classification by some future census, so that the act could not apply to them, but practically restricted its application to Fulton county. When it was declared that the class should consist of all counties having 100,000 inhabitants by the last or any future Federal census, with no other basis of classification than this, in order to be a general law it was necessary that it should be open to

let in any county which by any future census might have that population, and to be so framed as not to exclude such a county but to apply to it. It is not so shaped that this could be done. No more conclusive evidence of this fact could be produced than by referring to the office of solicitor-general. There are 28 judicial circuits in the State, each having a solicitor-general. In only two of these does one county constitute an entire circuit. In all others a circuit contains several counties. There was existing, prior to the passage of this act, a general law regulating the fees of solicitors-general throughout the State. This act declares that in any county which may hereafter have a population of 100,000, the solicitor-general shall fall within its provisions, and receive a salary instead of fees as at present. Take the Augusta circuit by way of illustration. It contains four counties. Suppose that at some time in the future Richmond County, in which Augusta is located, should have a population of 100,000. How could this act be applied to it? Would it be said that the County of Richmond should pay the solicitor-general a salary in accordance with the act, and in the other three counties he should continue to collect fees? If so, then the solicitor-general in the Atlanta circuit, which is composed of but one county, would be paid in one way, and the solicitor-general of the Augusta circuit would be paid partly in one way and partly in another. This would not be uniform. On the other hand, could it be contended that the County of Richmond should pay the entire salary provided by this act, and that the other three counties in the circuit should pay nothing to the solicitor-general, and he should collect no fees therein? If so, it would again be lacking in uniformity by seeking to impose upon one county the payment of the solicitor-general for services rendered in the entire circuit (omitting the small salary of $250 paid by the State), while there would be nothing paid in the other counties, either by way of salary or fees. So, the Macon judicial circuit includes three counties. If the County of Bibb should in the future have 100,000 inhabitants, how could the provisions of this act apply to it, and how could there be any uniformity in regard to that county and the others in the circuit?

Again, the act provides for the making of reports to the county commissioners, and confers on them very extensive authority in regard to the salaries of the officers named in it. It happens that

Fulton County has a board of county commissioners; but there are a number of counties in the State which have no such officers. It is palpable that the act would not be applicable to them, whether they should have a population of 100,000 in the future or not. It could not be·said that in such counties the intention would be that the reports should be made to the ordinary and the authority given by the act would be conferred on him, because the ordinary is himself one of the officers who is required by such act to make the report and be subject to the regulations of the county commissioners.

Still further, according to the last census only one county in the State, namely Fulton, has a population of 100,000; and at least, until the year 1920, when the next census will be taken, the act could not apply to any other county; so that it was patently the object of the act that for at least that length of time it should apply to but one county. It was passed after the census of 1910 had been taken, and with knowledge of that fact. Nevertheless it provided that the first statement should be filed with the county commissioners on November 20, 1912. While this alone would not serve to show that the act was intended as a local one, it contains an indication that it was intended to operate in only one county for a number of years; and when taken in connection with the fact that it could not operate in some counties at any time in the future, whether or not they had the requisite population declared to be the basis of classification, it serves forcibly to indicate that the legislature did not intend that the act should apply, now or hereafter, to all counties having that population; or if they did so intend, they framed the act so it could not have such an application.

There are also other indicia pointing to the fact that this act was intended to apply to Fulton county, and not in fact to be a general law. Thus in the first section it is declared that the clerk of the superior court shall receive a salary of $5,000 a year, which shall be in full of his services as such clerk, and for services as clerk of the city courts or other courts served by him. So also it refers to the solicitors of city courts, and solicitors of criminal courts. These provisions are applicable to Fulton county, and all of them are not applicable in other counties in the State. We know of no other county where there is a superior court, a city court, and a criminal court, and where the clerk of the superior court is ex-officio clerk

of the city court and the criminal court, and where there is a separate solicitor for the criminal court. If there is any other county having this combination of·officials, it has not been brought to our attention. While the making of provisions for such a case would not alone be sufficient to show that the act was intended as a local one, yet, as already stated in regard to other provisions, these things are all signposts pointing with fixed fingers in the direction of Fulton county; and when elaborate provisions are made applicable to Fulton county, many of which are not applicable to·any other county, and in fact could be applied to no other county, although it might have 100,000 population, we think it so plain that he who runs may read that this is a special law making provision for Fulton county and for no other.

Having therefore held that this act was special in its nature and not general, and it being in regard to matters for which provision had previously been made by an existing general law, it is violative of the clause of the constitution quoted in the beginning of this opinion, and is therefore void.

Numerous other grounds of attack are made upon the act, and some of them appear to be serious in character. By way of illustration of some of the questions so raised, it may be stated that the act provides that for any neglect or refusal to make a report to the commissioners, or for any wilful violation of any of the provisions of the act, an officer subject to such provisions shall be guilty of a misdemeanor, and on conviction shall be punished therefor, and that such conviction shall work immediate forfeiture of his office. It was contended with much force that some of the officers included within the provisions of this act are constitutional officers, having a term prescribed by that instrument, and are not subject to removal except in the manner therein prescribed. The constitution contains general provisions in regard to impeachment (Civil Code, § 6429), and also in regard to removal of county officers on conviction for malpractice in office (§ 6599). It was forcibly urged that the legislature could not provide for a forfeiture of the office of a constitutional officer in any other manner than that provided by the constitution itself. Still further, the tax-collector collects the revenue of the State as well as that of the county. For collecting the taxes of the State there is a general law providing what shall be his fees. The present act requires these

fees to be paid into the county treasury by the tax-collector. It was suggested that the fees taken from the State's revenue, as compensation for the tax-collector for the collecting of the State's taxes, belong either to the State or to the tax-collector, and could not be the property of the county from the revenue of which they were not taken, and for services to which they were not paid; that if these fees belong to the State, the legislature could not make a donation of them to the county, under the provision of the constitution which prohibits donations (Civil Code, § 6573); and that if, after they had been received and separated from the State's funds by the tax-collector as his compensation for serving the State, they belonged to him, such fund was his property, and the legislature could not take his property and give it to the county without violating the provision of the constitution of the State and that of the United States in regard to due process of law. Also, the provision for the appointment of an auditor and his payment from the fees collected by the officers, at a salary to be fixed by the county commissioners, whether or not the officers receive the full amount of the salaries specified for them (payable from fees), was attacked. And other questions were raised. As we have held that the act was a special one, and therefore unconstitutional, we do not deem it necessary to enter into a discussion of these questions, or to determine whether any of them would have affected the validity of the act had it been a general one. It is not necessary to decide whether it might or might not have been valid had it been something else than what it is. We content ourselves on this subject by simply mentioning some of the more important contentions.

It follows from what we have said, that, as the act is unconstitutional, it was error for the presiding judge to grant a writ of mandamus to compel the officers to make the report to the county officers for which the act provided.

*Judgment reversed. All the Justices concur.*