### SMITH *v.* CITY OF ATLANTA *et al.*

1. The provision of the act of the General Assembly, approved August 4, 1921 (Acts 1921, p. 665), being an act to amend the charter of the City of Atlanta, which authorizes the mayor and general council to pass an ordinance "districting or zoning the city for the purpose of regulating the location of trades, industries, apartment-houses, dwellings," etc., is unconstitutional and void in so far as it authorizes the municipal authorities to prohibit by ordinance the building of stores in districts set apart under the zoning regulations as residential districts or sections; the provision referred to being contrary to the due-process clauses of the State and Federal constitutions; and the ordinance passed in pursuance of the act of the General Assembly referred to is invalid and void to the same extent. This decision is not to be construed as a holding upon other provisions of the act and the ordinance intended to allow and make zoning regulations as to structures and

Constitutional Law 12 C. J. p. 892, n. 87; p. 893, n. 89; p. 932, n. 32; p. 933, n. 39, 40, 41, 42; p. 1265, n. 62.

Municipal Corporations 28 Cyc. p. 364, n. 85, 91; p. 374, n. 53; p. 736, n. 49; p. 774, n. 6.

buildings other than stores, that being the character of the buildings contemplated by the petitioner, for the erection of which she sought a building permit from the city authorities.

2. Injunction was the remedy available to the petitioner to secure relief as against prosecution threatened in the event she should proceed to erect the buildings without permit.

No. 4882. FEBRUARY 11, 1926.

Petition for injunction. Before Judge Ellis. Fulton superior court. March 10, 1925.

*Spence & Spence* and *Little, Powell, Smith & Goldstein,* for plaintiff.

*J. L. Mayson* and *J. M. Wood,* for defendant.

BECK, P. J. This case involves, primarily, the decision of the constitutionality of certain ordinances of the City of Atlanta, known as the zoning ordinances; and, as incidental thereto, the constitutionality of certain provisions of an act of the legislature approved August 4, 1921, being an act to amend the charter of the City of Atlanta, under authority of which the ordinances in dispute were enacted. The facts in the case, briefly stated, are as follows: Mrs. C. S. Smith, alleged that she was the owner of certain property within the limits of the City of Atlanta, extending along Piedmont Avenue approximately 225 feet, and running back to the right-of-way of the Southern Railway Company. She alleged that the property was peculiarly well adapted and especially valuable to be used for business purposes, because of its proximity to the railroad, and for other reasons; and for the same reasons she alleged that her property was practically valueless if she should be restricted to erect residential buildings thereon. At the time of the suit the property was vacant and had no earning capacity, and petitioner was sustaining expense in the form of taxes and loss of interest upon the money she had invested in the property. She made application for building permits, as provided by existing ordinances of the City of Atlanta, but permits were refused on the ground that they conflicted with the ordinances brought in question by the suit. The buildings contemplated were stores. Having offered to comply with the city's regulations relating to building permits, and the city having refused to issue permits, the plaintiff proceeded to start the erection of buildings; and thereupon she and her employees were arrested for a violation of the zoning ordinances, and these

cases were about to be tried when an injunction was sued out and the proceedings on the part of the city were halted.

The defendants answered the suit for injunction, primarily, by pleading the ordinances of the city known as the zoning ordinances, which are set forth fully in the record; and the case was heard upon the question of the constitutionality of the charter amendment and the ordinances. After hearing evidence and argument, the court passed an order denying the injunction, and, in effect, holding the ordinances and the act constitutional. The plaintiff, besides relying upon the general unconstitutionality of the act in question, also relied upon the unreasonableness of the ordinances in so far as they were made to apply to her property, even though the legislature might have had the power to pass the act in question. Plaintiff offered evidence to show that her property, alleged to be worth many thousands of dollars, would, under the operation of the ordinances, be practically valueless; that the application of the ordinances to her property would amount to depriving her of her property without compensation, and that it would amount to a taking of her property for public use without due process of law. To the judgment refusing an injunction she excepted.

The property of petitioner upon which she desires buildings to be used as retail stores had been zoned for residence purposes, and under the zoning ordinance the City of Atlanta would not permit stores to be erected in the district in which the property was situated. The ordinance zoning this district of the city was passed under authority expressly given by an amendment to the charter of the City of Atlanta, passed by the General Assembly of the State of Georgia, in an act entitled, "An act to amend an act establishing a new charter for the City of Atlanta, approved February 28, 1874," etc. The city in its answer in this case asserts that it would enforce the zoning ordinance, and claims the rightful authority to do so. The city further alleges: "The City of Atlanta is a large and growing city. As the result of this growth and as soon as residence sections are opened, some citizens, who do not care as much for the residences in such section as for income from their property, immediately put stores in such residence sections, and the result was to impair the value of such residence sections and to drive them away from their

property or to force the owner of such residences to buy out the property in which the projected stores were to be built. There were many other reasons which led to the districting of the city into uses so that while the business and manufacturing interests could be and would be provided for, yet places for residences would likewise be reserved. The City of Atlanta, as well as all progressive cities, came to realize that business interests had no regard for residence sections, and, on the other hand, residence sections were more necessary than business. People must have a place to breathe and live, precedent to their ability to labor and earn money. For this and many similar reasons the City of Atlanta applied to the legislature of Georgia for authority to district the city into zones, which zones should be set apart for the different uses. This was done, and under this authority a very complete ordinance was passed, which will be exhibited to the court on the trial of this case. By authority of this ordinance the section in which the property of plaintiff was located was zoned and business was prohibited. Petitioner has had the question up several times with the City of Atlanta, looking toward a change of this use from residence to business purposes. These various applications have been denied."

It is unnecessary to set out in full the act of the legislature amending the charter of the city or the very elaborate ordinance passed in pursuance of the powers conferred by that act. So far as it relates to the case made in this record, the ordinance in effect prohibited the erection of buildings to be used as retail stores upon any property in a district of the city set apart, under the ordinance referred to, as a residence section. If that part of the act which authorized the city to so redistrict or divide up the city into zones is constitutional and valid, then it would seem to follow that the ordinance is also valid; and if that part of the act of the General Assembly to which we make special reference is unconstitutional and invalid, then that part of the ordinance passed in conformity to the act is also invalid. And so the principal and controlling question that we have to deal with is the constitutionality and validity of the act and ordinance in question; or, rather, the constitutionality of that part of the act and ordinance which prevents the building of stores upon property located in the districts made residential by the city's ordinance.

The right to redistrict the city and to prohibit the erection of business houses and stores in certain districts is claimed by the city, not under its right of eminent domain, for no compensation is to be paid to those property owners who are refused the right to erect stores; but it is asserted as a proper exercise of the police power. It is unnecessary here to attempt a discussion of the police power, or to enter upon a discussion of the extent of this power. The decision which we render in this case is based largely upon decisions already made both by this court and by other courts of last resort in various States of this country. In several of those cases will be found lengthy and luminous discussions of the police power, its extent, limitations, purposes, and sources, which may be read with profit by lawyers and laymen. We shall not quote at any length from what is said by the various courts and text-writers upon the subject generally; but we shall cite and refer to cases in which this question is discussed, and shall quote such parts of several decisions as bear directly upon the question involved here. The importance of the subject is manifest, and no discussion of the problems with which municipalities are confronted is necessary to show, not only the present importance of the question, but its growing importance. We are glad to feel that we are relieved of the necessity of entering upon any original discussion of the subject, for we are relieved of that task by the discussions which we find in adjudicated cases and well-known text-books. We are not unappreciative of the carefully prepared briefs of counsel in this case, which if they do not contain an exhaustive catalog of the cases decided by the courts of last resort in this country, at least call attention to a very large number of those cases. And from what we deem sound reasoning in the adjudicated cases holding that it is not within the power of the legislature to authorize a municipality to enact, in the form of an ordinance, a prohibition against the erection of such buildings as are in question here, upon property bought without restrictions, we have reached a conclusion in harmony with those decisons and are compelled to dissent from the decisions rendered by highly respectable courts holding the contrary.

In the case of Pennsylvania Coal Company *v.* Mahon, 260 U. S. 393 (43 Sup. Ct. 158, 67 L. ed. 322, 28 A. L. R. 1323), the Supreme Court of the United States held void an act of the leg-

islature which undertook to regulate the mining of coal, and in the course of that opinion it was said: "As applied to this case the statute is admitted to destroy previously existing rights of property and contract. The question is whether the police power can be stretched so far. Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized, some values are enjoyed under an implied limitation, and must yield to the police power. But obviously the implied limitation must have its limits, or the contract and due-process clauses are gone." We do not mean that the question dealt with in the case last cited is very similar to the one involved here, but there are principles stated, and well stated, having a general application.

In the case of Spann v. Dallas, 111 Tex. 350 (19 A. L. R. 1387, 235 S. W. 513), it was said: "The ordinance is clearly not a regulation for the protection of the public health or the public safety. It is idle to talk about the lawful business of an ordinary retail store threatening the public health or endangering the public safety. It is equally idle, in our opinion, to speak of its impairing the public comfort or as being injurious to the public welfare of a community. Retail stores are places of trade, it is true, but as ordinarily conducted they are not places of noise or confusion. This is particularly true of small stores, such as it appears the plaintiff contemplated erecting. The ordinary trading that goes on within them is reputable and honorable, and can hurt nobody. According to common experience it is done in an orderly manner. It could disturb or impair the comfort of only highly sensitive persons. But laws are not made to suit the acute sensibilities of such persons. It is with common humanity—the average of the people—that police laws must deal. A lawful and ordinary use of property is not to be prohibited because repugnant to the sentiments of a particular class. The ordinance visits upon ordinary retail stores, engaged in a useful business, conducted in an orderly manner, frequented and availed of by respectable people, and doubtless serving as a convenience to many, all the proscription visited upon common nuisances. In the face of common knowledge that they are ordinarily respectable and peaceable places for the conduct of perfectly lawful

pursuits evolved out of recognized customs and habits of the people as old as American life, the ordinance deals with them as though they had all the offensive character of a nuisance. But their treatment, in effect, by the ordinance as a nuisance, does not make them so. It is a doctrine not to be tolerated in this country that either State or municipal authorities can, by their mere declaration, make a particular use of property a nuisance which is not so, and subject to the ban of absolute prohibition. Yates v. Milwaukee, 10 Wall. 497, 19 L. ed. 984." And in the same decision it was said: "The police power is founded in public necessity, and only public necessity can justify its exercise. The result of its operation is naturally, in most instances, the abridgment of private rights. Private rights are never to be sacrificed to a greater extent that necessary. Therefore the return for their sacrifice through the exercise of the police power should be the attainment of some public object of sufficient necessity and importance to justly warrant the exertion of the power. The public health, the public safety, and the public comfort, are properly objects of this high importance; and private rights, under reasonable laws, must yield to their security. Since the right of the citizen to use his property as he chooses, so long as he harms nobody, is an inherent and constitutional right, the police power can not be invoked for the abridgment of a particular use of private property, unless such use reasonably endangers or threatens the public health, the public safety, the public comfort or welfare. A law which assumes to be a police regulation, but deprives the citizen of the use of his property under the pretense of preserving the public health, safety, comfort, or welfare, when it is manifest that such is not the real object and purpose of the regulation, will be set aside as a clear and direct invasion of the right of property without any compensating advantages. Cooley, Const. Lim. 248." This decision is an application to the particular question we have before us of a general rule, that private property must be held subordinate to the police regulations of a city, but that lawful property can not be destroyed or confiscated under the mere guise of police regulation. And to destroy the right to enjoy and dispose of property is to a certain extent the destruction of property.

In the case of City of Dallas v. Burns, 250 S. W. 717, the

Court of Civil Appeals of Texas reaffirmed the principle laid down in the Spann case, supra, and said: "A city is without power, through ordinance or otherwise, to prohibit erection of a business building such as a retail grocery store or drug store in a residential district, in compliance with the demands of a reasonable code, and that part of an ordinance attempting to grant to municipal authorities the power to prohibit such erection is invalid."

In the case of Ambler Realty Co. *v.* Euclid (Ohio), 297 Fed. 307, it was ruled: "A village zoning ordinance restricting the class of buildings which may be built within certain distances from designated streets, and which as affecting complainant's property, consisting of a considerable tract of unimproved land, would prevent the sale and use of a large part of it for legitimate purposes to which it would normally, because of its location, be devoted, with consequent substantial depreciation of its market value, *held* void as depriving complainant of its property without due process of law, in violation of the fourteenth amendment, as well as in violation of provisions of the State constitution of Ohio." The Supreme Court of Illinois, in the case of Friend *v.* City of Chicago, 261 Ill. 16 (49 L. R. A. 438, Ann. Cas. 1915A, 292, 103 N. E. 609), held: "An ordinance making it unlawful to locate, build, or construct any retail store in any block used exclusively for residence purposes, without the written consent of a majority of the property owners, according to frontage, on both sides of the street in the block in which the building is to be located, can not be sustained as an exercise of the police power, there being nothing inherently dangerous to the health or safety of the public in conducting a retail store." See also Willison *v.* Cook, 54 Colo. 320 (44 L. R. A. (N. S.) 1030, 130 Pac. 828). In that case the Supreme Court of Colorado said: "A store building in a residence section of the city is not desirable, from an esthetic point of view; but restrictions for this purpose alone can not be upheld, as it is only those having for their object the safety and welfare of the public which justify restricting a use of property by the owner. Curran Bill Posting & Distributing Co. *v.* Denver, 47 Colo. 221 [107 Pac. 262, 27 L. R. A. (N. S.) 544]; State *v.* Whitlock, 149 N. C. 543 [63 S. E. 123, 128 Am. St. R. 670, 16 Ann. Cas. 765]; Varney & Green

*v.* Williams, 155 Cal. 318, 21 L. R. A. (N. S.) 741, 132 Am. St. R. 88, 100 Pac. 867; Passaic *v.* Paterson Bill Posting, Adv. & Sign Painting Co., 72 N. J. L. 285, 111 Am. St. Rep. 676, 62 Atl. 267, 5 Ann. Cas. 995; Com. *v.* Boston Advertising Co., 188 Mass. 348, 69 L. R. A. 817, 108 Am. St. Rep. 494, 74 N. E. 601." The Missouri Supreme Court has held: "The State can not authorize the passing of a zoning ordinance which would restrict the use of private property for legitimate purposes without compensation."

In the case of Ignaciunas *v.* Risley, 98 N. J. Law, 712 (121 Atl. 783), the Supreme Court of New Jersey held: "The right to acquire property, to own it, to deal with it, and to use it, as the owner chooses, so long as the use harms nobody, is a natural right. This does not owe its origin to constitutions. It existed before them. Spann *v.* Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387. It is, however, a right guaranteed by our constitutions. It is a right necessary to the existence of organized society." In this last case there is a discussion of the main question involved in the present record and of certain subsidiary questions under consideration. See also the discussion of this question by the Court of Errors and Appeals of the State of New Jersey in the case of Ignaciunas *v.* Town of Nutley, 99 N. J. Law, 389 (125 Atl. 121). Many other authorities from outside States might be added. Many of them are referred to in the cases which we have cited above. One desiring to pursue the subject along the lines indicated may easily find these references. While this court has not ruled upon the exact question which we deem controlling in the instant case, we find in several decisions the principles underlying those which we have cited and quoted from, stated with great clearness. In the case of *Holman* v. *Athens Empire Laundry Co.,* 149 *Ga.* 345 (100 S. E. 207, 6 A. L. R. 1564), it was said: "Every one has the right to use his property as he sees fit, provided that in so doing he does not invade the rights of others unreasonably, judged by the ordinary standards of life and according to the notions of reasonable men. The right to use one's property as he pleases implies a like right in every other person; and it is qualified by the doctrine that the use in the first instance must be a reasonable one. The maxim is sic utere tuo ut alienum non lædas. . . That the busi-

ness itself is offensive to others, or that property in the neighborhood of such business is necessarily adversely affected thereby, or that persons of fastidious taste would prefer its removal, is not sufficient. Applying the foregoing principles to the case in hand, the defendant may make any use of its property, and carry on any business not per se a nuisance, that produces no unnecessary, unreasonable, unusual, or extraordinary impregnation of the air with smoke or soot, to the sensible inconvenience and discomfort of plaintiff's tenants, or to the actual, tangible, and substantial injury of plaintiff's realty." In the case of *Carey* v. *Atlanta,* 143 *Ga.* 192 (84 S. E. 456, L. A. R. 1915D, 684, Ann. Cas. 1916E, 1151), this court said: "While the police power is very broad, its limits are within the constitution. In *Cutsinger* v. *Atlanta,* 142 *Ga.* 555 (83 S. E. 263 [L. R. A. 1915B, 1097, Ann. Cas. 1916C, 280]), the following was quoted with approval from the decision In Re Jacobs, 98 N. Y. 98 (50 Am. R. 636) : 'The limit of the [police] power can not be accurately defined, and the courts have not been able or willing definitely to circumscribe it. But the power, however broad and extensive, is not above the constitution. When it speaks, its voice must be heeded. It furnishes the supreme law, the guide for the conduct of legislators, judges, and private persons; and in so far as it imposes restraints, the police power must be exercised in subordination thereto.' In the opinion it was held: 'The constitution of this State not only recognizes the necessary power of the courts to declare laws in violation of the State or Federal constitution void (a power already known to exist), but expressly declares it to be their duty to hold such acts void.' The effect of the ordinance under consideration was not merely to regulate a business or the like, but was to destroy the right of the individual to acquire, enjoy, and dispose of his property. Being of this character, it was void as being opposed to the due-process clause of the constitution."

The act of the legislature containing the authority for the ordinance in question recites that the power of zoning is conferred "in the interest of the public health, safety, order, convenience, comfort, prosperity," etc. But legislative declarations of facts that are material only as the ground for enacting a law will not be held conclusive by the courts. *Block* v. *Hirsh,* 256

U. S. 135 (41 Sup. Ct. 458, 65 L. ed. 865, 16 A. L. R. 165);
Shoemaker *v.* United States, 147 U. S. 282 (13 Sup. Ct. 361, 37
L. ed. 170); Prentis *v.* A. C. L. Co., 211 U. S. 210 (29 Sup.
Ct. 67, 53 L. ed 150). While the legislature is the sole judge
as to matters pertaining to the policy, wisdom, and expediency
of statutes enacted under the police law, the question as to wheth-
er the particular legislation purporting to be enacted in the ex-
ercise of the police power is really such, and whether regulations
prescribed by the legislature are constitutional, are questions for
the judiciary. 12 C. J. 933, and cases cited.

There are cases decided by courts of other States which hold
differently from those to which we have called attention as sup-
porting our views upon the important question under considera-
tion. The brief of counsel for defendants calls attention to those
cases, and we have given them careful consideration; but we
concur in the views expressed in those cases holding that ordi-
nances and acts of the legislature like that in question here are
unconstitutional and invalid. As said above, many other cases
in addition to those cited could be added here. Cases from oth-
er States to which no reference is here made, clearly supporting
the views announced above, might be added.

In holding that the enabling act of our General Assembly, and
the ordinance passed by the City of Atlanta in pursuance of
that act, are unconstitutional and invalid, we do not mean to
hold nor to intimate that the entire act or the entire ordinance
is invalid; we confine our ruling to the holding that so much
of the ordinance, and so much of the act as authorized that ordi-
nance, as makes it unlawful to erect a store in a residential sec-
tion set aside under the zoning law is unconstitutional and in-
valid. Both the act of the General Assembly authorizing the
zoning, and the ordinance providing for zoning of the city, are
elaborate in the statement of their purposes, and the provisions
of that act and that ordinance, except in so far as they deal with
the subject of erecting houses of the character especially under
consideration, are not involved here and their constitutionality is
not passed upon.

It follows from what we have said that the judgment of the
court below refusing the injunction should be reversed.

*Judgment reversed. All the Justices concur.*