18449. HERROD *et al. v.* O'BEIRNE *et al.*
18450. REEVES *v.* HERROD *et al.*

Argued January 12, 1954—Decided February 8, 1954—
Rehearing denied March 10, 1954.

*Raymond M. Reed, Powell, Goldstein, Frazer & Murphy, Travers Hill, L. C. Hames, Jr.,* for plaintiffs in error.

*J. G. Roberts, Bryan, Carter, Ansley & Smith, Moise, Post & Gardner, Howell C. Ravan, Harold S. Willingham,* contra.

WYATT, Presiding Justice. 1. The first question presented is the validity of the act of the General Assembly (Ga. L. 1953, Jan.-Feb. Sess., p. 2788). This act is attacked on several grounds. One ground of attack is that the act provided for the zoning of the property here in question by the legislature, and that the legislature has no such power. In 1927 (Ga. L. 1927, p. 127) the legislature proposed a constitutional amendment that was ratified in 1928 providing as follows: "The General Assembly of the State shall have authority to grant the governing authorities of the municipalities and counties authority to pass zoning and planning laws whereby such cities or counties may be zoned or districted for various uses and other or different uses prohibited therein, and regulating the use for which said zones or districts may be set apart, and regulating the plans for development and improvements on real estate therein." (Constitution of 1945; Code, Ann., § 2-1923). Prior to this time this court had consistently held that counties and municipalities were without authority to zone property even if the charter of the municipality gave them the right to zone. Among a number of cases holding to this effect, see *Smith* v. *City of Atlanta*, 161 *Ga.* 769 (132 S. E. 66, 54 A. L. R. 1001), and *Morrow* v. *City of Atlanta*, 162 *Ga.*

228 (133 S. E. 345). It follows that any right to zone property in this State must be found in the amendment to the Constitution above quoted.

A mere reading of this provision will disclose that the only authority therein granted to the legislature is the authority to delegate to counties and municipalities the right to zone. Neither under this provision of our Constitution, nor under any other provision of our Constitution or laws, has the legislature the right to zone property. This constitutional amendment vests this power in the local authorities where it properly belongs. It follows, the act of 1953, supra, is invalid.

Since under this ruling the act must fall, it becomes unnecessary to consider the other attacks made on the act.

2. The trial court, after holding the act of 1953 to be unconstitutional and void, further held that the defendant in the court below was the holder of a permit issued by the sole Commissioner of Cobb County to construct a cemetery on the property in question, and refused to invalidate the permit so issued.

Section 1 of Ga. L. 1910, p. 131 provides: "Be it enacted, That in all counties in this State having a population of one hundred and twenty-five thousand (125,000), or more, the Board of County Commissioners, or if there be no such Board, the Ordinary of said county, shall have the power to grant or refuse permission to establish outside of the limits of incorporated towns, cemeteries, hospitals, sanatoriums, or similar institutions." Ga. L. 1911, p. 200, extended the provisions of the act of 1910 to all counties adjoining counties having a population of 125,000 or more. Cobb County is a county coming within the terms of these acts. These acts were further amended in 1935 (Ga. L. 1935, p. 384), extending the provisions of the acts to other institutions not here involved.

All these acts are here attacked as being special laws and, therefore, unconstitutional. This court has many times held that the language of these statutes as to population does not have the effect of making statutes of this kind special laws. For a few of the many decisions so holding, see *Jackson* v. *State Highway Department*, 164 *Ga.* 434 (138 S. E. 847); *Nichols* v. *Pirkle*, 202 *Ga.* 372 (43 S. E. 2d 306); *Williamson* v. *Housing Authority of Augusta*, 186 *Ga.* 673 (199 S. E. 43); *Cooper* v. *Rollins*, 152 *Ga.*

588 (110 S. E. 726, 20 A. L. R. 1105). It follows, there is no merit in the contention that these statutes violate article I, section IV, paragraph I of the Constitution of Georgia.

The author of this opinion, speaking for himself only, as he has previously stated, is not in accord in his own thinking with many of the decisions of this court dealing with this question. It seems to me that this device has been used as a means of making a patchwork of our Constitution. However, we are bound by the many unanimous decisions of this court on the question.

It is next insisted that the above acts of the legislature, even if constitutionally enacted, were repealed by the Comprehensive Zoning Statute (Ga. L. 1943, p. 902). The answer to this contention is that the zoning statute relied upon contained this provision: "Be it further enacted, That this act shall not repeal any law now of force restricting the construction and defining the conditions under which cemeteries, hospitals, and other similar institutions may be constructed and maintained within Cobb County, Georgia." Ga. L. 1943, p. 905, sec. 9. The effect of this provision was to require, as had theretofore been required, a permit from the county authorities before a cemetery could be constructed. We see no reason why this is not a perfectly valid provision of the zoning statute, and this provision was clearly authorized under the caption of the zoning statute.

We conclude, therefore, that there is no merit in any of the questions raised by the plaintiff in error. In this view of the case, it becomes unnecessary to pass upon the attacks made in the cross-bill of exceptions on the zoning ordinance.

It follows that the case is affirmed on the main bill of exceptions and on the cross-bill of exceptions insofar as the cross-bill is here passed upon.

*Judgment affirmed on the main bill of exceptions. All the Justices concur, except Duckworth, C. J., Hawkins and Almand, JJ., who dissent from the ruling in headnote 2 and the corresponding division of the opinion, and from the judgment of affirmance. The judgment of affirmance on the cross-bill is concurred in by all the Justices.*

ALMAND, Justice, dissenting. For two reasons, I dissent from the ruling in the second headnote and the corresponding division of the opinion.

First. The act of 1910 (Ga. L. 1910, p. 130), the act of 1911 (Ga. L. 1911, p. 200), and the act of 1943 (Ga. L. 1943, p. 902), all relate to the same subject matter, and must be construed together. All of these acts impose restrictions upon the use of private property, and have for their purpose the protection of the public health and welfare. Under the acts of 1910 and 1911, a person owning property in the rural territory of Cobb County could not establish a cemetery on his property without first obtaining a permit from the county commissioners. Under the Planning Commission Act of 1943, the Cobb County Planning Commission has the right to establish restricted districts in that county and to enact ordinances prohibiting or regulating certain uses of property located within the zoned districts. Section 9 of the act of 1943, which provides that the act shall not repeal any law now of force restricting the construction and defining the conditions under which cemeteries could be constructed and maintained in the rural areas of Cobb County, does not purport to provide that one could establish a cemetery in a district the use of which is restricted to agricultural and residence purposes, by simply obtaining a permit from the county commissioners; and the zoning of the property for cemetery purposes would not relieve the owner from obtaining a permit from the county commissioners before establishing a cemetery. The acts thus construed together mean that, before a cemetery could be established, (a) the property must be zoned for such use, and (b) a permit must be obtained from the county commissioners.

Second. In my opinion, the acts of 1910 and 1911 violate article I, section IV, paragraph I of the Constitution of 1877 (Code of 1910, § 6391; Code of 1933, § 2-401) and article I, section IV, paragraph II (Code of 1933, § 2-102). The act of 1910 applies only to counties having a population of 125,000 or more. The legislature can make a classification of counties for the purpose of classification by population, but the basis of a classification based upon population must have some reasonable relation to the subject matter of the law, and must furnish some legitimate ground of differentiation. A mere arbitrary classification is not permissible under the Constitution (*Stewart* v. *Anderson*, 140 *Ga.* 31, 78 S. E. 457); and the purpose of the act of 1910 was to prevent the establishment of cemeteries in rural areas of

counties having a population of 125,000 or more without the granting of a permit by the county authorities. I am unable to see how the total population of a county has a reasonable relation to the establishment of cemeteries in a rural area. In one county only 10% of the population may live in the rural areas, and 90% in the incorporated areas. In one county the rural area may be populated thickly, and in another, sparsely. The apparent purpose of the law was to prevent the establishment of cemeteries in rural areas, to protect the health and welfare of those living near a proposed cemetery. Such being the case, why wouldn't a person living in the rural section of a county having a population of 124,499 be entitled to the same protection? I cannot see how the total population of a county can have any reasonable relation to the question of where a cemetery should be established in the rural area of a county.

The act of 1911, which provides in section 1 that, "in all cases where it is now provided by the operation of existing laws that cemeteries . . . can not be established in the rural territory of any county without the permission of the Board of County Commissioners . . . it shall be likewise unlawful to establish any such cemetery . . . in any adjoining county without the permission" of the person or persons in charge of the county business, is clearly invalid. By its own terms—"That in all cases where it is now provided by the operation of existing laws"—the act limits its operation to those counties which adjoin another county having a population in 1911 of 125,000, and makes no provision for counties that in the future would adjoin counties having a population of 125,000. Furthermore, I can not see any reason for a classification of counties based upon the population of an adjoining county. One adjoining county may have a population of 3,000 and be subject to the law, whereas a county not adjoining may have a population of 124,499 but would not be subject to the act of 1911. The act being a health measure enacted under the police power, making the 1910 act applicable only to counties having a population of 125,000, and the act of 1911 making the 1910 act applicable to all adjoining counties, shows that the act is arbitrary and has no reasonable relation to the subject matter of the law, viz., where cemeteries may be placed in rural areas of a county.

*Duckworth, C. J., and Hawkins, J., concur in this dissent.*