18736. HUMTHLETT *et al. v.* REEVES *et al.*

ARGUED SEPTEMBER 16, 1954—DECIDED NOVEMBER 9, 1954—REHEARING
DENIED DECEMBER 2, 1954.

*Raymond M. Reed, Powell, Goldstein, Frazer & Murphy,* for plaintiffs in error.

*Moise, Post & Gardner, Howell C. Ravan, Bryan, Carter, Ansley & Smith, J. G. Roberts,* contra.

HAWKINS, Justice. (After stating the foregoing facts.) ■ Section 1 of Ga. L. 1910, p. 131, provides: "Be it enacted, that in all counties in this State having a population of one hundred and twenty-five thousand (125,000), or more, the Board of County Commissioners, or if there be no such Board, the Ordinary of said county, shall have the power to grant or refuse permission to establish outside of the limits of incorporated towns, cemeteries, hospitals, sanatoriums, or similar institutions." Ga. L. 1911, p. 200, sec. 1, provides that, "in all cases where it is *now* provided by the operation of existing laws that cemeteries . . . can not be established in the rural territory of any county without the permission of the Board of County Commissioners . . . it shall be likewise unlawful to establish any such cemetery . . . in any adjoining county without the permission" of the person or persons in charge of the county business. While this court, in *Herrod v. O'Beirne,* 210 *Ga.* 476 (80 S. E. 2d 684), by a majority opinion held both of these acts to be valid as against the attack that they were unconstitutional because violative of article I, section IV, paragraph I of the Constitution of 1945 (Code, Ann., § 2-401), providing that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law," upon the theory that the classification by population makes them general and not special laws; and while, as there said, under the authorities there cited, acts which have been classified upon the basis of population have been held to be general and not special laws where population has some reasonable relation to the subject matter of the law, and furnishes some legitimate ground of

differentiation—there can be no reason for classification of counties based upon population of an adjoining county, and to so classify a county as coming within the purview of an act because of the population of some other county is purely arbitrary. The population of one county cannot have any reasonable relation to the subject matter of a statute such as this so as to make it applicable to an adjoining county. *Stewart* v. *Anderson,* 140 *Ga.* 31 (78 S. E. 457); *City of Atlanta* v. *Wilson,* 209 *Ga.* 527 (74 S. E. 2d 455); *City of Atlanta* v. *Sims,* 210 *Ga.* 605 (82 S. E. 2d 130). The act of 1911, by its own terms, limits its operation to those counties which adjoined another county having a population in 1911 of 125,000, and makes no provision for counties that in the future would adjoin counties having a population of 125,000. In *Tift* v. *Bush,* 209 *Ga.* 769, 771 (75 S. E. 2d 805), this court held: "In order for an act which makes a classification by population to be general, rather than special, it must not only be open to let in counties subsequently falling within the class, but must be open to let out a county which, either by increase or decrease according to the last census, ceases to have the required population." And in *Stewart* v. *Anderson,* 140 *Ga.* 31, 33, supra, it is said: "If the classification is sought to be made with reference to counties, and the basis of classification is legal, the law must apply to all counties within the class, or which may come within the class." The decision in *Herrod* v. *O'Beirne,* supra, being by a divided bench, and, as applied to the act of 1911, in conflict with the principle announced in the older full-bench decision in *Stewart* v. *Anderson,* supra, will not be followed here. This court did not, as contended by counsel for the defendants, hold that the acts of 1910 and 1911 were valid, in *Hallman* v. *Atlanta Child's Home,* 161 *Ga.* 247 (130 S. E. 814), *Southview Cemetery Assn.* v. *Kitchens,* 162 *Ga.* 322 (133 S. E. 919), and *South View Cemetery Assn.* v. *Hailey,* 199 *Ga.* 478 (34 S. E. 2d 863). An examination of each of those cases will disclose that this court was there simply applying the provisions of the act of 1910, which had there been invoked, and that in none of those cases was any question raised or passed upon as to the constitutionality of either of the acts.

■ The decision in *Herrod* v. *O'Beirne,* supra, is not the law of the case, nor res judicata of the question here presented.

While the defendants in that case and the defendants here are the same, and while the land in both cases is the same, the plaintiffs in the two cases are entirely different, and the petition in the *Herrod* case was not brought as a class action so as to bring this case within the ruling made in *Walker* v. *Hamilton,* 210 *Ga.* 155 (78 S. E. 2d 511); but the petition was one by the plaintiffs therein, who are strangers to the present proceeding, solely on their own behalf to protect their individual rights. In 30 Am. Jur. 963, § 228, it is said: "Obviously, the doctrine of res judicata will not be applied on the theory of virtual representation where the original action is brought by a stranger to the subsequent action solely on his own behalf to protect his individual rights under a contract with the defendant." See also Code § 110-501; *Bedingfield* v. *Moye,* 143 *Ga.* 563 (85 S. E. 856); *Browning* v. *Guest,* 147 *Ga.* 400 (94 S. E. 234).

Neither does the rule of stare decisis—which is that a principle of law that has become settled by a series of decisions generally is binding on the courts and should be followed in similar cases—require that we follow the previous decision of this court in the *Herrod* case, supra. That is the first case, so far as we have been able to find, which holds that the rule announced by previous decisions of this court that reasonable classification by population renders an act general rather than special should be so extended as to make classification by population of one county the basis of applying the act to an adjoining county that does not have the required population. We are convinced that this extension of the rule is unsound, and the doctrine of stare decisis should not be followed to the extent that error may be perpetuated. See, in this connection, 21 C. J. S. 302, § 187, and p. 322, § 193; 14 Am. Jur. 283, § 59 et seq., and p. 291, § 78. Moreover, the majority opinion in *Herrod* v. *O'Beirne,* supra, did not deal specifically with the question of the act of 1911 (Ga. L. 1911, p. 200), being limited by its terms to those counties which then adjoined a county having the population specified by the act of 1910, and making no provision to let in counties thereafter coming within the classification; and evidently overlooked this question being presented by the record, and the previous full-bench decisions in *Stewart* v. *Anderson,* supra, and *Sumter County* v. *Allen,* 193 *Ga.* 171, 176 (17 S. E.

2d 567), and the more recent decision in *Tift* v. *Bush,* supra, concurred in by six Justices, · Presiding Justice Atkinson not ·participating, all of which hold that, in order to be valid, a classification by population must open to let in counties subsequently falling within the classification. These older full-bench decisions are binding on this court, and require us to follow them in the present case notwithstanding the more recent decision in .the *Herrod* case, supra, concurred in by only four Justices, which must yield to the older decisions. *Almand* v. *Board of Education of Laurens County,* 161 *Ga.* 911, 918 (131 S. E. 897) ; *Harris* v. *Duncan,* 208 *Ga.* 561, 562 (67 S. E. 2d 692), and cases there cited. Since the *Herrod* decision was so recently rendered, and is in such direct conflict with the older full-bench decisions that no one could have been led to rely upon it as permanently fixing the law and been misled by it to his hurt and injury, there is no occasion for applying the doctrine of stare decisis. *Walton* v. *Benton,* 191 *Ga.* 548 (13 S. E. 2d 185). Chief Justice Bleckley, in discussing the rule of stare decisis in *Ellison* v. *Georgia Railroad Co.,* 87 *Ga.* 691, 696 (13 S. E. 809), had this to say: "Minor errors, even if quite obvious, or important errors if their existence be fairly doubtful, may be adhered to and repeated indefinitely; but the only treatment for a great and glaring error affecting the current administration of justice in all courts of original jurisdiction, is to correct it. When an error of this magnitude and which moves in so wide an orbit competes with truth in the struggle for existence, the maxim for a supreme court, supreme in the majesty of duty as well as in the majesty of power, is not stare decisis, but *fiat justitia ruat coelum* [let justice be done, though the heavens should fall]."

■ It is insisted by the defendants that, even if the act of .1911 should be declared invalid, they would still have the right to establish a cemetery on the property involved, because, as they contend, there has been no valid zoning of the property exclusively for residential and agricultural purposes. It is insisted by the defendants that every statute enacted which purports to confer upon Cobb County the right to zone property is unconstitutional. We do not deem it necessary to deal with the various attacks made upon the act of 1943 (Ga. L. 1943, p. 902), as amended by the act of 1949 (Ga. L. 1949, p. 1499),

purporting to confer upon the Planning Commission of Cobb County the power to zone property therein outside the incorporated cities, and creating a Board of Zoning Appeals, because, prior to either of those acts, and in 1937 (Ga. L. 1937-38, Ex. Sess., p. 790), the General Assembly passed an act conferring upon the County Commissioner of Cobb County the power to zone property outside the incorporated cities of the county. It appears from the record that, pursuant to that act, the County Commissioner did in 1939, by an ordinance adopted in conformity therewith, zone the property here involved exclusively for residential and agricultural purposes, and prohibited its use for any other purpose. Thus, conceding for the sake of argument, but not deciding, that the acts of 1943 and 1949 are unconstitutional to authorize zoning, they would likewise be ineffective to repeal the act of 1937, supra, and if that act and the zoning of the property involved thereunder be valid, the trial court should have enjoined its use for the establishment of a cemetery thereon. *Hardin* v. *Croft*, 207 *Ga.* 115 (3) (60 S. E. 2d 395). The defendants insist, and the trial court held, that the act of 1937, supra, was void because the act approved August 15, 1921, creating a County Commissioner for Cobb County, which the act of 1937 purported to amend, was never adopted, never went into effect, and never became law, because not ratified by a vote of the people as required by its terms. While there is no contention in this case that the act approved August 15, 1921, was ever ratified or became effective, we do not agree with the conclusion reached by the trial court that the act of 1937 is void because in its caption and in the body of the act it purported to amend the act of 1921. While it does purport to amend the act of 1921, at the time of its passage there was in effect an act approved August 7, 1924 (Ga. L. 1924, p. 314), creating the office of Commissioner of Roads and Revenues of Cobb County. An examination of the act of 1937 (Ga. L. 1937-38, Ex. Sess., p. 790) will show that the caption declares a purpose to amend an act approved August 15, 1921, "and all acts amendatory thereof" creating the office of Commissioner of Roads and Revenues of Cobb County, by amending section 8 of said act relating to the jurisdiction and powers of said Commissioner "so as to authorize and empower said Commissioner to pass and enforce zoning and

planning ordinances," etc. By section 1 it is provided "that section 8 of the act approved August 15, 1921, as amended, creating the office of Commissioner of Roads and Revenues for the County of Cobb and defining the powers and jurisdiction of said Commissioner" be amended by adding a new section at the end of section 8 to be numbered 8-a, and to read as follows: "8-a. In addition to all other powers and authority exercised or to be exercised by the Commissioner of Roads and Revenues, said Commissioner is hereby authorized and empowered to make, promulgate and declare zoning ordinances providing for the zoning or districting of the territory of Cobb County [not included in city limits of cities of the county] for various uses, prohibiting or regulating the use of property located in said zones or districts for purposes other than those prescribed by the Commissioner," and the act proceeds to set forth in orderly subparagraphs the power that is conferred upon the Commissioner and the method whereby property shall be zoned.

From an examination of the act of 1937 (Ga. L. 1937-38, Ex. Sess., p. 790), it is perfectly clear that it was the intention of the General Assembly to confer upon the Commissioner of Roads and Revenues of Cobb County the power to enact zoning ordinances as had been authorized by the amendment to the Constitution of 1877 ratified June 8, 1937 (Ga. L. 1937, p. 1135, Code, Ann., § 2-1826), which conferred upon the General Assembly authority to grant to the governing authorities of any city or county in this State having a population of 1,000 or more, according to the Federal census of 1930, or any future census, the authority to pass zoning and planning laws whereby such cities or counties may be zoned or districted for various uses and other or different uses prohibited therein, etc. The governing authority referred to in the act of 1937 was the Commissioner of Roads and Revenues of Cobb County. If the 1937 act had simply declared a purpose to confer upon the Commissioner of Roads and Revenues of Cobb County authority to pass zoning and planning laws, it would have been sufficient without any reference to the act of the General Assembly creating that office, and without the necessity for an amendment to any particular statute. The fact that the author of the bill mistakenly referred to the act of 1921 will not destroy the act, for the reason that

the legislative intent is plain and clear—to confer the power to enact zoning laws upon the county commissioner therein named. In *Lamons* v. *Yarbrough,* 206 *Ga.* 50 (1) (55 S. E. 2d 551), it is said: "It is the duty of the courts, in the interpretation of statutes, to seek diligently to arrive at the legislative intent, and, in order to do so, they should not adopt an arbitrary rule that the legislature intended to make a typographical or clerical error, the result of which would be to make nonsense of the act, and destroy it." In *Central of Georgia Ry. Co.* v. *State of Georgia,* 104 *Ga.* 831, 839 (31 S. E. 531, 42 L. R. A. 518), this court said: "A legislative body should always be presumed to mean something by the passage of an act." In *Carroll* v. *Ragsdale,* 192 *Ga.* 118, 120 (15 S. E. 2d 210), it is held: "While all parts of the statute should be preserved, yet a cardinal rule of construction is that the legislative intent shall be effectuated, even though some verbiage may have to be eliminated. The legislative intent will prevail over the literal import of the words." And this seems to be the universal rule, for in 50 Am. Jur. 220, § 233, it is said: "In the case of a mistake in a reference in a statute to another statute, to a constitutional provision, or to a public document, record, or the like, where the real intent of the legislature is manifest, and would be defeated by an adherence to the terms of the mistaken reference, the mistaken reference will be regarded as surplusage, or will be read as corrected, in order to give effect to the legislative intent." In 82 C. J. S. 425, § 257, we find the following: "Mere clerical errors or omissions in the reference to, and identification of, the act or statute to be amended will not invalidate the amendatory statute, where, notwithstanding such errors or omissions, the act or statute to be amended is pointed out with reasonable certainty. Legislative enactments are not, any more than other writings, to be defeated because of mistakes, errors, or omissions, provided the intention of the legislature can be collected from the whole statute." See also Code § 102-102 (9); *Board of Tax Assessors of Decatur County* v. *Catledge,* 173 *Ga.* 656 (160 S. E. 909); *Scott* v. *Mayor &c. of Mount Airy,* 186 *Ga.* 652 (198 S. E. 693); *Sumter County* v. *Allen,* 193 *Ga.* 171 (17 S. E. 2d 567); *Bennett* v. *Wheatley,* 154 *Ga.* 591 (115 S. E. 83); *Gazan* v. *Heery,* 183 *Ga.* 30 (187 S. E. 371, 106 A. L. R. 498); *McCallum* v. *Bryant,*

ante, p. 98 (84 S. E. 2d 39). The 1937 act (Ga. L. 1937-38, Ex. Sess., p. 790) being complete within itself, and the intention of the legislature being clear, the act will not be held invalid because it mistakenly referred to the act of 1921 (Ga. L. 1921, p. 427), and this is particularly true when it is not essential to the validity of the act that it amend any other. The case of *Lampkin* v. *Pike*, 115 *Ga.* 827 (42 S. E. 213, 90 Am. St. R. 153), relied on by counsel for the defendants, is distinguishable from the instant case. The act there held invalid, because it attempted to amend an act which had previously been repealed, was not a complete act within itself, but was purely and simply an effort to amend a previously repealed act by striking therefrom the word "town" wherever it occurred and inserting in its stead the word "city." The trial court, therefore, erred in holding the act of 1937 (Ga. L. 1937-38, Ex. Sess., p. 790) invalid because it purported to amend the act of 1921, which had never become effective.

■ It is further contended by the defendants that the act of 1937 (Ga. L. 1937-38, Ex. Sess., p. 790) contravenes and is violative of article I, section IV, paragraph I of the Constitution of 1945 (Code, Ann., § 2-401), which provides: "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law," and of the Constitution of 1945, article XI, section I, paragraph VI (Code, Ann., §. 2-7806), which provides in part: "Whatever tribunal, or officers, may be created by the General Assembly for the transaction of county matters, shall be uniform throughout the State, and of the same name, jurisdiction, and remedies, except that the General Assembly may provide for Commissioners of Roads and Revenues in any county," and similar provisions of the Constitution of 1877, in that said act constitutes a special law enacted in a case for which provision has been made by an existing general law, viz., the act approved August 10, 1910 (Ga. L. 1910, p. 130), and the act approved August 21, 1911 (Ga. L. 1911, p. 200); because there is a general law on zoning, viz., Code (Ann. Supp.) Ch. 69-8, and because there is an existing general law with respect to zoning, viz., the Airport Zoning Act, Code (Ann. Supp.) Ch. 11-4 (Ga. L. 1946, p. 121), and because

said act does not have uniform operation throughout the State, but purports to permit Cobb County to have a particular system which is different from other systems of zoning throughout the State. None of these attacks upon the act is meritorious. We have here held that the act approved August 21, 1911 (Ga. L. 1911, p. 200), is invalid. In *Rhodes* v. *Jernigan,* 155 *Ga.* 523, 528 (117 S. E. 432), it was held: "Under the following decisions of the Supreme Court the General Assembly has the power to pass separate and distinct laws creating county commissioners of roads and revenues for every county in Georgia; and the provisions of general laws enacted by the legislature do not apply to such officers, unless made so by the special laws creating them. On this issue, see the cases of *Pulaski County* v. *Thompson,* 83 *Ga.* 270 (9 S. E. 265), *Sayer* v. *Brown,* 119 *Ga.* 539 (46 S. E. 649), and *Smith* v. *Duggan,* 153 *Ga.* 463 (112 S. E. 158)." See also *Bradford* v. *Hammond,* 179 *Ga.* 40 (175 S. E. 18); *Robitzsch* v. *State,* 189 *Ga.* 637 (7 S. E. 2d 387); *Moore* v. *Whaley,* 189 *Ga.* 647 (7 S. E. 2d 394); *Bowen* v. *Lewis,* 201 *Ga.* 487, 489 (40 S. E. 2d 80); *Robert* v. *Steed,* 207 *Ga.* 41 (60 S. E. 2d 134); *Hutchins* v. *Candler,* 209 *Ga.* 415, 418 (73 S. E. 2d 191).

■ It is further contended that the act of 1937 (Ga. L. 1937-38, Ex. Sess., p. 790) and all zoning thereunder is unconstitutional and void because violative of article I, section I, paragraph III of the Constitution of Georgia of 1945 (Code, Ann., § 2-103), and the similar provisions of the Constitution of 1877, that no person shall be deprived of life, liberty, or property, except by due process of law, and of the due-process clauses of the 5th and 14th amendments to the Constitution of the United States (Code §§ 1-805 and 1-815); and that the zoning of the property of the defendants exclusively for residential and agricultural purposes is arbitrary, unreasonable, capricious, and unenforceable. Under the decisions of this court in *Howden* v. *Mayor &c. of Savannah,* 172 *Ga.* 833 (159 S. E. 401), and *Schofield* v. *Bishop,* 192 *Ga.* 732 (16 S. E. 2d 714), these contentions of the defendants are clearly not meritorious.

■ It is further contended by the defendants that the act of 1937 (Ga. L. 1937-38, Ex. Sess., p. 790), is unconstitutional and void because it is violative of article V, section I, paragraph XII of the Constitution of 1945 (Code, Ann., § 2-3012), and similar

222

provisions of the Constitution of 1877, that no law shall be enacted at called sessions of the General Assembly except as shall relate to the object stated in the proclamation convening them, in that the act of 1937 does not relate to the object stated in the Governor's proclamation convening the 1937-38 extra session of the General Assembly. This contention is also without merit. As already pointed out, the amendment to the Constitution of 1877 (Code, Ann., § 2-1826), which conferred upon the General Assembly the power to grant to governing authorities of Cobb County the authority to pass zoning and planning laws, was ratified at the general election held on June 8, 1937. The act here under attack was enacted at the 1937-38 extra session of the General Assembly and was approved on December 27, 1937. Reference to the proclamation of the Governor convening that session of the General Assembly (Georgia House Journal, Extraordinary Session 1937-38, pp. 7 and 8) shows that it contained the following: "Whereas, the people of Georgia have ratified in a popular election a number of amendments to the Constitution of this State, in the General Election of June 8, 1937, which election was held since the last regular session of the General Assembly; and Whereas, it is necessary to have certain enabling acts and legislation to put into effect the objects and purposes included in said amendments to the Constitution; and, . . . Now, therefore, under and by virtue of the provisions of law contained in Article V, Section I, Paragraph XIII of the Constitution of Georgia, I, E. D. Rivers, Governor of Georgia, do hereby convoke and call a meeting of the General Assembly of this State in Extraordinary Session at 10:00 o'clock A. M., on Monday, November 22, 1937, for the purpose of considering and enacting laws and resolutions, by revision, repeal, amendment, or otherwise, relating to all of the following objects, which are considered by the Executive of sufficient importance to make the necessity for such Extraordinary Session, to wit: . . . Enabling acts for all constitutional amendments ratified at the General Election held on June 8, 1937, and laws relating to such amendments."

The foregoing rulings being controlling in the instant case, it becomes unnecessary to pass upon other constitutional attacks made by the defendants upon other statutes and chapters of the

Code. For the reasons herein pointed out, the judgment of the trial court must be

*Reversed. All the Justices concur, except Wyatt, P. J., and Head, J., who dissent.*