THE CHEROKEE IRON COMPANY, plaintiff in error, vs. AUGUSTUS R. JONES, defendant in error.

A company incorporated to manufacture pig iron, undertook to erect a corn and flour mill, and one of the stockholders filed a bill to enjoin the use of the corporate funds for such purpose, which injunction the judge, after an answer and a hearing, granted:

*Held*, that as the right so to use the corporate funds depends upon whether the purpose is merely to erect machinery to grind the grain to be used by the laborers and animals employed in the manufacture of the pig iron, or whether the grinding of grain for the public generally is not also a leading purpose, and as this is a question of fact to be determined by the evidence, and as we are not satisfied that the judge has abused his discretion, the judgment ought to stand.

Injunction.    Corporations.    Before Judge UNDERWOOD. Polk county.    At chambers.    April 13th, 1874.

Jones filed his bill against the Cherokee Iron Company making, in substance, the following case:

An act of the legislature of February 18th, 1873, incorporated A. G. West, J. H. Browning and A. Griffith, and such other persons as they might associate with them, as the Cherokee Iron Company, located in the county of Polk, with power only to make and manufacture pig iron. On the 5th of March, thereafter, the corporators named, together with the firm of Philpot, Jones & Company, said firm composed of Calvin Philpot, J. H. Dodds and complainant, merchants, entered into written articles of agreement, in substance as fol-

The Cherokee Iron Company *vs.* Jones.

lows: The corporators named and "the firm of Philpot, Jones & Company," agree "that they will become the owners of the capital stock of the Cherokee Iron Works of Polk county, lately chartered by the general assembly of the state," fixing said capital stock at $150,000 00, with the privilege of increasing the same, and fixing the shares of the parties respectively as follows: A. G. West, one-third, Brownig one-third, Griffith $20,000 00, and " the firm of Philpot, Jones & Company," $30,000 00. If the whole capital named should not be required, each to contribute in the proportion mentioned. Each to have interest on his payments at eight per cent. until the furnace should be put in blast, at which time stock to be issued to each in proportion to the amount of his payments, provided no member by making advancements should be entitled to more stock than the portion first agreed to be taken. Each obligates himself to use his utmost endeavors for the interest of the company.

At the time this agreement was made the complainant was the owner of a valuable flouring and grist mill near Cedar Town, and near the location of the company's proposed works. This was one principal reason why he consented for said firm to take stock, believing the iron works would greatly enhance the value of his mill, a short time before purchased at about $20,000 00. At that time it was not contemplated that the company would manufacture "to any considerable extent" anything but iron, as provided by the charter; and certainly not, that it would erect a flouring and grist mill; or if so, it was carefully concealed from him. Therefore, with his approval, the firm of Philpot, Jones & Company had paid about $15,000 on their stock, which, with the other subscriptions, he had hoped, was being properly expended.

Without his knowledge certain stockholders had applied at the last session of the legislature for an amendment to the charter, giving power to erect other machinery, etc., the object of which was to obtain covertly the power to erect a mill in connection with the other works. On hearing this he endeavored to defeat the move, and did secure a proviso in the

The Cherokee Iron Company *vs.* Jones.

act, which he hoped would protect his interest. At any rate, he has assented to no amendment which will authorize the company to build a mill, but has all the time expressed his dissent, and his intention to resist any attempt to do so. Notwithstanding these facts, the company is about to begin the erection of a flour and grist mill near the furnace, and within about two miles of his mill; has already built the dam, hauled part of the lumber, and unless restrained will complete the same, thereby misapplying the funds and property of the company, and greatly injuring him by withdrawing and diverting custom from his mill. Had he known of such purpose of the company he would never have consented for said firm (in which his interest is one-third,) to take stock or make payments as aforesaid.

Prays injunction and general relief.

The answer of the defendant set up the following facts: The building of the mill was contemplated at the time of the organization, and such purpose was not in any manner concealed from complainant. The company had no motive to conceal any purpose from him. The building of a mill *was* contemplated and provided for from the first, as a matter of course, the same being a necessary appendage to, if not a part and parcel of, such works. It is customary among all such companies to have a mill, shops, and other appendages to the main works, for the purpose of supplying themselves, their employees and dependents, and the public generally, so far as their own demands will admit. Such appendages are necessary and valuable aids to the success of the main enterprise. No practical iron manufacturer considers such works, located as they usually are, remote from the ample and steady supply of a city, complete or properly equipped without such appendages. The company's works are located in a rural district, twenty miles from Rome, the nearest town of considerable size. When in full operation, they will employ about three hundred hands, who, with their families, will make a population of about one thousand, all dependent on the company for their daily supplies. About seventy-five mules, besides a large number of

The Cherokee Iron Company *vs.* Jones.

oxen, will also be employed, all the grain for the feed of which should be chopped or partially ground, as a matter of economy. It is essential to the success of the company that the large supply of breadstuffs and grain thus required be constant—not dependent on the will or favor of others, nor liable to casualties, and be furnished with as much economy as possible. To accomplish this it is necessary to have a mill. The tolls it will probably receive from such grinding as it may do for the public will furnish a considerable part of the supply required. Besides, there are on the lands of the company, purchased for supplies of iron ore and timber, nine hundred acres of productive open land, contiguous to the company's works, the rents and profits from which will yield the company a large amount of grain. This fact alone makes the possession of a mill by the company, for grinding and preparing this grain for its own use, a matter of great economy and necessity.

The answer then proceeds to give a detailed history of the operations of the defendant since its organization, in all of which appears the intention to erect a mill, and to show the complainant's acquiescence. Offers to release complainant from his subscription to stock, and to refund to him what he has paid in, with interest thereon. Alleges that complainant's real object is to force the defendant to purchase his mill at an exhorbitant price.

The bill was supported by an additional affidavit from the complainant. The answer, by the affidavit of A. Griffith, a stockholder in defendant, and the affidavits of James Noble, Sr., John W. Noble and Thomas McCullough.

The chancellor ordered the injunction to issue as prayed for, and defendant excepted.

WRIGHT & FEATHERSTON, for plaintiff in error.

ALEXANDER & WRIGHT; HAMILTON YANCEY; JOSEPH A. BLANCE, for defendant.

McCay, Judge.

It is very plain that if the real purpose of the managers of this company is to erect a corn and flour mill for general purposes, as an independent enterprise, and not as a mere incident to the iron works, they are entering into a business *ultra vires*, and one which the complainant is not committed to— nay, one that the corporation, as such, has no legal right to undertake.   Whether this be so or not, is not clear.   One cannot fail to suspect that the iron works of this company are still rather in the mist, and we are not surprised that the judge has seemingly come to the conclusion that, if let alone, all the funds will go into the mill, and instead of being a mere incident to the iron works, it will be the sole enterprise. At any rate, as this is a question of fact, and the judge has seen fit to grant the injunction until the case can be heard before a jury, we will not interfere.   We incline in favor of the judge's view of it, and think he has exercised his discretion wisely.

Whether the corn and flour mill is not the best investment, is not the question.   The complainant has a right to insist on it that the funds of the company shall go to the uses designed by the charter, and all the parties together do not, as a corporation, have the legal right to engage in the milling business, except as a mere incident to the purposes of their incorporation.

Judgment affirmed.