FUTRELL *et al.,* commissioners, *v.* GEORGE *et al.*

1. The act of August 12, 1903 (Acts 1903, p. 26), is in conflict with article 1, section 4, paragraph 1, of the constitution of this State, and is therefore invalid.

2. Section 2 of the above act is so connected with the general legislative scheme embodied in the act, that it can not be stricken and the remainder of the statute be upheld as valid.

OCTOBER 13, 1910.

Injunction. Before Judge Felton. Crawford superior court. February 17, 1910.

J. W. George and others, alleging that they were citizens and taxpayers of Crawford county, brought their equitable petition against L. C. Futrell and others, commissioners of roads and revenues of the county, alleging, that they are about to put in operation the alternative road law; that unless they are enjoined they will proceed to spend large sums of the county's money in working the roads of the county under the provisions of that law, which petitioners allege is not in force in said county; that the commissioners have levied a tax for the purpose of putting in operation the law referred to, which tax is in process of collection by the tax-collector of the county; that at the March term, 1909, of the superior court of the county the grand jury thereof recommended putting in force the alternative road law as embodied in §§ 573-583 of volume 1 of the Code of 1895; that subsequently, and before the same had been put into effect, an election was held under the provisions of the act of the General Assembly approved August 12, 1903 (Acts 1903, p. 26), for the purpose of passing upon the question as to whether or not said alternative road law should go into effect or remain in effect in the manner provided in that act; that the result of said election, which it is alleged was regularly held, was, "by a very large majority, against the alternative road law, and said election was so declared by the ordinary;" and that the effect of said election was to nullify the recommendation of the grand jury and to prevent the operation of said alternative road law under the recommendation of that body, or, if in any manner or degree the

law is put in operation, to suspend the operation of such law. The defendants answered, admitting that the grand jury of the county had recommended the putting in force of the alternative road law as alleged in the petition; they denied, however, that this recommendation had been nullified by the election referred to in the petition; and they set up, by way of demurrer, that the act of the General Assembly approved August 12, 1903, and purporting to amend an act approved December 21, 1897, is unconstitutional, in that it is repugnant to article 1, section 4, paragraph 1, of the constitution of this State, which provides that laws of a general nature shall have uniform operation throughout the State, and that no special law shall be enacted in any case for which provision has been made by an existing general law.

Upon interlocutory hearing the court granted the following order: "This case coming on to be heard on the petition, demurrer thereto, and answer, and upon considering the affidavits and other evidence adduced, it is ordered and adjudged that the defendants, W. P. Carr, L. C. Futrell, and John I. Champion, commissioners, are enjoined from taking any further steps in the operation or enforcement of the alternative road law in the county of Crawford, and that the restraining order heretofore granted be continued of force until the final trial of this cause. It is the purpose and intent of this order to declare that the alternative road law is not of force in said county, but was suspended by the vote of December 13, 1909, as ordered by the ordinary; but the said commissioners are not enjoined from taking proper care of the bridges and roads of said county, under the general law of force."

*L. D. Moore* and *A. J. Danielly,* for plaintiffs in error.

*H. A. Mathews* and *R. C. LeSueur,* contra.

Beck, J. (After stating the foregoing facts.)

1. It appears that the alternative road law, embraced in §§ 573-583 of volume 1 of the Code of 1895, was in effect in the county of Crawford by virtue of the recommendation of the grand jury of that county at the March term, 1909, of the superior court, unless the election referred to in the petition, under the provisions of the act approved August 12, 1903 (Acts 1903, p. 26), had the effect of annulling the recommendation of the grand jury to put in operation the alternative road law. The court below was of the opinion that this law was not of force in said county, but was sus-

pended by a vote in the election held December 13, 1909, as ordered by the ordinary. The plaintiffs in error, however, contend that the act of August 12, 1903, is unconstitutional, being in conflict with the provisions of article 1, section 4, paragraph 1, of the constitution, which provides that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." In the case of *Haney* v. *Commissioners*, 91 *Ga.* 770 (18 S. E. 28), this court held that the act approved October 21, 1891, now embraced in §§ 573-583, vol. 1, of the Code of 1895, in relation to public roads, is a general law and has uniform operation throughout the State, and it may be put in operation in any county in the State upon the recommendation of the grand jury at any term of the superior court of the county, and the operation of this alternative road law may be suspended in any county in the State where it has once been put in operation upon a like recommendation of the grand jury, after the lapse of three years from the time it is put into operation. Thus a complete system of road laws for the State, which may be put into effect in any county upon recommendation of the grand jury and after a fixed period be suspended upon a like recommendation, is provided for by a general law. If the act of 1903, relative to the same subject, should be held valid, it would have the effect of providing another method by which the suspension of the alternative road law could be accomplished, different from that provided in the law embraced in the sections of the code referred to; and to that extent, in those counties where a majority of the voters who cast their ballots in favor of the suspension of the law, the operation of the statute would be suspended. No one doubts that it was competent for the legislature to bring about such a result by the passage of a general law; but it was not permissible to accomplish this result by a special law which would have the effect of arresting the uniform operation throughout the State of the existing general law. And it only remains for us to inquire whether or not the act of August 12, 1903, is a general or a special law.

If the act of August 12, 1903, had been a law providing for the suspension of the alternative road law as contained in the code, of uniform operation throughout the State, it would have been a general law and efficacious in its purpose of providing a system for

suspending that law where it had been put in operation by the recommendation of a grand jury. But if in its nature it is a special law, it would not be given this effect, under the provisions of our constitution stated above. In the case of *Mathis* v. *Jones,* 84 *Ga.* 804 (11 S. E. 1018), it was said: "You can not make a general statute cease to be general otherwise than by another statute repealing it. That is, under the constitution of 1877, you can not repeal a general law in part by a local law; for in the eye of the constitution, every local law is special relatively to a general law. A law once territorially general must remain so until it is wholly repealed, however its provisions may be otherwise varied by subsequent legislation. One and the same law for the whole State must be a general law; and a general law must while it exists have a general nature, whether its subject-matter be of a general or a local nature. In the light of the present constitution it would be absurd to say of any valid general law that it is not a law of a general nature, though it might be quite correct to say of some general laws that the nature of their subject-matter is local. But no general law, whatever be its nature, can, under that constitution, be put aside by a subsequent special law. If at any time there is upon the statute book, taken as a whole, a general statute which provides for the case in hand, any local statute providing for it would necessarily contain the same or different provisions; if the same, it would be superfluous; and if different, it could have no effect without making the general statute cease to be territorially general and thereby arresting its uniform operation throughout the State. The scheme of our present constitution is not only to have general statutes uniform in their operation throughout the State when they are enacted, but to have them remain so as long as they remain in force. . . All special or local laws must find material upon which to operate outside of the scope of general laws. They can withdraw nothing from the domain of general laws which lie within their purview; for to do this would destroy their uniform operation as general laws for the State at large." The act of August 12, 1903, is not a general law, because, while having words of territorial comprehensiveness coextensive with the State, certain counties are exempted from its operation; thus it is not operative in counties having a population of "between 7,000 and 8,000, of between 13,700 and 14,000, or of between 16,000 and 21,000, as

shown by United States census of 1900." It will be observed that the counties exempted from the operation of the law last referred to are fixed by terms of unchangeable rigidity. It does not purport to create a class of counties exempt from the operation of the law into which any county of the State may come upon a change in its population, but the description is such that only those counties which had a certain population according to the census of 1900 could come. That is as effective to exempt from the operation of the law certain counties in the State as if their names had been given. An entirely different question from that involved in the instant case would be presented for decision if, instead of the arbitrary classification of counties by which it was sought to exempt certain counties from the operation of the act, a reasonable classification had been made, even though the classification, made upon a reasonable basis, should have had the effect of exempting some counties from being affected by the statute. The draftsman of the bill seems to have been aware of the fact that if he had specified certain counties by name as being exempt from the operation of the law the act would have been wanting in that territorial completeness necessary to render the act a general law; but when he gave a description of them, he designated the particular counties exempt as definitely as if their names had been stated. In the case of *Thomas* v. *Austin*, 103 *Ga.* 701 (30 S. E. 627), it is stated as a well-defined rule: "that the words 'throughout the State,' as used in the constitution, necessarily imply that in order for a law to partake of the nature of generality, it should, by its terms, show that it is capable of being applied in any county in the State. It is not necessary that every county in the State, at the time of the passage of the law, should fall within its operation, but it is necessary that none should be excepted in such a way that it can never fall within its provisions. If, therefore, a statute should except from its operation even one county, either by name or by the use of such words as clearly indicate that the law can never apply to such county, the act is lacking in the feature of 'territorial generality,' and is, therefore, not a general law. We think this case is controlled by the decision in *Lorentz & Riltler* v. *Alexander*, 87 *Ga.* 444 (13 S. E. 632). In that case Justice Simmons said: 'The act of 1872, which first provided for the establishment of county courts, was not a general law having uniform operation throughout

the State, for the act itself excepted 46 counties from its operation. The act of 1879, which amended the prior act, was not a general law, for the same reason. It excepted Walton county by name, and all counties in which a city court had been established, and all counties in which county courts were then existing. A law to be general under this section of the constitution must operate uniformly, throughout the whole State, upon the subject or class of subjects with which it purposes to deal. The act under consideration deals with the establishment of county courts. In order for it to be general and have uniform operation throughout the State, it must affect each county in the State. If it excepts one, or several, it is not general, and can not have this uniform operation in all counties of the State. It follows, therefore, that the act in question is not a general law, under this clause of the constitution.' " We are therefore of the opinion that the act of August 12, 1903, under consideration is unconstitutional and repugnant to the provisions of the constitution above quoted.

This case is not altered by the fact that the act held to be unconstitutional purports to be an amendment to the act of 1897, and amendatory of the road law embraced in the sections of the code referred to. We think that after a general law is enacted and put in force, it can be—to quote the language of Chief Justice Bleckley in *Mathis* v. *Jones,* supra,—"killed but not mutilated; the smallest of their territorial members can not be cut off. There is no way to convert a statute territorially general into one territorially special. It may be altered at will save that whilst it has life it must live all over the State with equal vigor, and can be excluded from no nook or corner in which there is a subject-matter for its operation. Any of its attributes may be changed or destroyed except its territorial generality and uniformity. These must be as enduring as its life. If it is the will of the legislature to make a law which is operative throughout the State, its operation must be uniform." And it is pertinent to observe further, that it does not seem to have been contemplated by the legislature that section 2 of the act of 1903, which exempts certain counties from the operation of this amendatory act, should have been applicable to or should have limited the general alternative road law as embraced in the code, but it limits merely the territorial operation of the amendatory act.

2. Section 2 of the act of August 12, 1903, is so connected with the general legislative scheme embodied in the act that it can not be stricken and the remainder of the statute be upheld as valid.

The election held under the provisions of the act of 1903 could not have the effect of suspending the operation of the road law which had been put into effect by the recommendation of the grand jury; and the court below erred in granting the order contrary to this ruling.　　　*Judgment reversed.　All the Justices concur.*