19635.   HANSELL *v.* CITIZENS & SOUTHERN NATIONAL BANK.

ARGUED MARCH 11, 1957—DECIDED MAY 13, 1957.

*Moise, Post & Gardner, Connerat, Dunn, Hunter, Cubbedge & Houlihan,* for plaintiff in error.

*Alston, Sibley, Miller, Spann & Shackelford, Douglas, Adams & Adams,* contra.

ALMAND, Justice. This is an action brought by a minority stockholder against The Citizens & Southern National Bank, a national banking corporation, seeking a declaratory judgment declaring a provision of an act of the General Assembly of Georgia (Ga. L. 1956, p. 309) to be unconstitutional and void, and any permit issued on the strength thereof by the Comptroller of the Currency to be of no force and effect, and praying that the defendant be enjoined from establishing or operating any new branches in any city or municipality of the State of Georgia other than in the City of Savannah, where its principal office is located. Petitioner alleges that, pursuant to said unconstitutional act of the General Assembly, the officers and directors of the defendant bank are proceeding to act ultra vires and in violation of the regulatory laws of this State covering the establishment of branch banks, and, unless enjoined, they will proceed to establish illegal branch banks and expend excessive sums in doing so, to the detriment of the stockholders. The case is before this court on review of a judgment whereby certain demurrers were sustained to the petition as amended, and the same was thereafter dismissed.

The petition, as finally amended, fully set out numerous constitutional attacks upon the act in question and, together with the attached exhibits, fully reviewed the entire history of banking in this State, setting forth the various statutes which regulate the banking business and are pertinent to this case. In substance, these are as follows:

(a) Prior to the general Banking Act of 1919, there were no statutory restrictions on branch banking in Georgia, but in 1919 (Ga. L. 1919, p. 135), the Superintendent of Banks was authorized to approve the establishment of branches in the same city or elsewhere if satisfied that the public convenience and advantage would be promoted.

(b) In 1927, a general act (Ga. L. 1927, p. 195) was passed prohibiting the establishment of new branch banks in the State.

(c) In 1929, the General Assembly enacted two statutes (Ga. L. 1929, pp. 214, 215) authorizing the establishment of branch

banks in cities, "now or hereafter having a population of not less than 80,000 or more than 125,000" and "having a population of not less than 200,000," in which the principal office of said bank is located.

(d) The act of 1956 (Ga. L. 1956, p. 309) deals with restrictions on banks having a holding-company relation, and authorizes present branches of a bank with a holding-company relation to make branches of existing holding-company banks, and in the future in cities of over 80,000 population, now having branches of a bank, present branches will have the same privilege of additional branches as permitted to other banks.

(e) Title 12, U. S. C., Sections 21-95, known as the National Banking Act, authorizes national banks to establish and operate new branches "at any point within the State . . . if such establishment and operation are at the time authorized to State banks by the statute law of the State." 12 U. S. C. A. 129, § 36.

Under the authority of (d) and (e) above, the defendant national bank is allegedly establishing and operating new branches which are here sought to be enjoined because the State law authorizing the same is unconstitutional. The petition raises the following constitutional questions in regard to the act: (a) it is a special law enacted in a case where there is already a general law; (b) it is lacking in uniformity throughout the State; (c) the basis for the classification has no reasonable relation to the subject matter; (d) being a special law, it lacks the proper notification by publication of the intent to apply for local legislation; (e) it has more than one subject matter; (f) it violates the due-process and equal-protection clauses of the State and Federal Constitutions; (g) it is vague and indefinite and a reasonable construction cannot be applied so as to determine its meaning.

The demurrers, in substance, set out: that no cause of action is alleged; that the State court lacks jurisdiction; that the petition fails to allege valid constitutional attacks; and that there is a nonjoinder of necessary parties. The lower court, in sustaining the general demurrers, wrote a lengthy opinion explaining its ruling, which was that: (a) the court lacked jurisdiction; (b) the action was a collateral attack on the action of the Comptroller of the Currency, and he was an indispensable party to the suit;

(c) the plaintiff failed to show uncertainty and insecurity entitling him to declaratory relief; and (d) in the event that the court was in error on any of the above, then the statute attacked is, nevertheless, not subject to any of the attacks made on its constitutionality. Thereafter, the petition was dismissed, and the exceptions here are to that dismissal and to the sustaining of the general demurrers.

■ The trial court held that the petition failed to state a case for declaratory judgment. In substance, the petition alleged: that the plaintiff owned 800 shares of the capital stock in the defendant bank; that the defendant has applied to the Comptroller of the Currency of the United States for permits to establish branch banks in Atlanta, Macon, and possibly in places other than Savannah; that, under the National Banking Act, supra, a national bank is authorized to establish and operate a new branch only if the establishment and operation thereof is at the time authorized to State banks by the statute law of the State; that the defendant claimed that it had authority to establish branches in cities other than Savannah by virtue of sec. 3 of the Act of 1956, supra; that any and all permits which the Comptroller of the Currency may issue to the defendant, and the application of any act towards the opening, maintenance, or operation of a branch bank in any city outside of Savannah, "are and will be unconstitutional, void, illegal and of no force or effect because they are contrary to and in violation of" specified provisions of the Constitution of Georgia; that on July 6, 1956, plaintiff, as a stockholder of defendant bank, addressed a letter to the president of said bank protesting the contemplated establishment of branch banks in cities other than Savannah, demanded that no such banks be established because the last sentence of sec. 3 of the act of 1956, supra, was void and unconstitutional as being a special law, and requested that his objections be submitted to the stockholders of the bank; that the president of the defendant bank replied by letter on July 10, 1956, and stated that the board of directors had elected to proceed immediately to establish branch offices in Atlanta and Macon when permission was granted, and "if the constitutionality of the act is to be tested, it can be done here without jeopardizing our present affiliates"; that on July 24,

1956, the Comptroller of the Currency approved the issuance of a permit to the defendant to establish a branch bank in Atlanta. The plaintiff further alleged: "In the event defendant proceeds to establish a branch bank or branches, as herein complained of, and it should be finally determined that such establishment is unconstitutional or illegal, then such branches would have to be closed down and disposed of and not further operated by the defendant, and the charter of defendant would be subject to action of forfeiture or revocation, and great losses in the establishment of facilities, in advertisements, in promotional work, in salaries, and in development of businesses would automatically occur, all to the great detriment of petitioner"; and that, "unless enjoined, defendant will proceed to establish branch banks as above set forth, and will expend sums in excess of $100,000.00 in doing so, and will place its right to operate in jeopardy and subject its charter to cancellation because of its violation of law. Once these branch banks are established, it will be expensive to disestablish them, and this expense can be avoided by an injunction and by a declaration of the unconstitutionality and invalidity of the proposed course of action by defendant. Plaintiff has no adequate relief in law or equity except such as is prayed for in this action." It was further alleged that the Attorney General of Georgia and the Deputy Comptroller of the Currency had declined to render any opinion as to the validity of sec. 3 of the act of 1956, supra.

The Declaratory Judgment Act (Ga. L. 1945, p. 137) authorizes the superior courts of this State, in cases of actual controversy where it appears to the court that the ends of justice require it, to declare rights and other legal relations of any interested party petitioning for such declaration. In *Cohen* v. *Reisman*, 203 *Ga.* 684 (1) (48 S. E. 2d 113), this court said: "The liberality of construction as to whether resort to a declaratory judgment is available is determined by reference to whether any existing provision of law or equity will provide as complete protection as would a declaratory judgment with respect to some future action or conduct, as to the propriety of which a rationable doubt exists. Code (Ann. Supp.) § 110-1111." The petition shows an unquestionably justiciable controversy, where there is

uncertainty and insecurity with respect to the right of the defendant to carry out present plans to create and operate branch banks, in which venture the plaintiff, as a stockholder, and the defendant bank are entitled to a declaration as to whether this action is valid or ultra vires. The petition sets forth a cause of action for declaratory judgment. See Ashwander *v.* Tennessee Valley Authority, 297 U. S. 288 (56 Sup. Ct. 466, 80 L. ed. 688).

■ It is contended that the plaintiff, as a stockholder, cannot maintain this action to challenge the act of 1956, supra, because such statute operates to his benefit, and because he does not show that the operation of the statute injures him in any manner. In *Central Railroad Co.* v. *Collins,* 40 *Ga.* 582, 617, the stockholders of certain railroad companies sought to enjoin the ultra vires acts of their corporations. It was there held: "We do not think the profitableness of this contract, to the stockholders of the Central and Southwestern Railroad stockholders, has anything to do with the matter. These stockholders have a *right,* at their pleasure, to stand on their contract. If the charters do not give to these companies the *right* to go into this new exterprise [sic], any one stockholder has a right to object. He is not to be forced into an enterprise not included in the charter." (Italics ours.) The plaintiff, as a stockholder in the defendant bank, has a right to insist that the defendant, in carrying out its corporate powers, does not transgress the laws of the State of Georgia, and the fact that the establishment of branch banks will result in benefit to the stockholders has no bearing on the right of a stockholder to challenge the validity of the bank's action where such action or threatened action of the bank's directors is alleged to be beyond the charter powers of the corporation. Code § 22-711; *Cherokee Iron Co.* v. *Jones, 52 Ga.* 276; *Macon Gas Co.* v. *Richter,* 143 *Ga.* 397, 401 (85 S. E. 112) ; *South Western R. Co.* v. *Benton,* 206 *Ga.* 770, 788 (58 S. E. 2d 905).

■ The defendant bank insists that the court did not have jurisdiction in a collateral action to void the permit issued to the defendant by the Comptroller of the Currency to establish a branch bank. The only prayer of the petition that relates to the Comptroller of the Currency is that the court declare any permit issued by the Comptroller of the Currency on the strength of sec.

3 of the act of 1956, supra, "to be unconstitutional and of no force and effect whatsoever." The plaintiff does not seek to have the court restrain or control any future action of the Comptroller of the Currency. Under the provisions of 12 U. S. C. A. 129, § 36(c), the Comptroller can approve the establishment of branch banks by the defendant only "if such establishment and operation are at the time authorized to state banks by the statute law of the State in question by language specifically granting such authority affirmatively." The petition in the instant case not only alleges past and present action by the defendant in obtaining permits from the Comptroller of the Currency for the establishment of branches, but also alleges that the defendant plans the establishment of branches in other cities in the future. What consequences would follow, if and when it is determined by the courts of this State that the challenged provisions of the act of 1956, supra, are unconstitutional as to the operation of branch banks established under permits issued by the Comptroller of the Currency since the passage of said act, is a matter that cannot be determined in this proceeding. See Thompson v. Saint Nicholas National Bank, 146 U. S. 240 (13 Sup. Ct. 66, 36 L. ed. 956). Whether there is or is not a valid statute of Georgia that permits the establishment of branch banks in cities other than where their principal office is located is a question for decision by the courts of Georgia and not by the Federal courts. Thompson v. Consolidated Gas Utilities Corp., 300 U. S. 55 (57 Sup. Ct. 364, 81 L. ed. 510); *South Western Railroad Co.* v. *Benton,* supra, headnote 2. If Georgia laws do not allow the establishment of branches by the defendant in cities other than Savannah, the Georgia courts may grant appropriate relief irrespective of any approval granted by the Comptroller of the Currency allowing the defendant to do so. First Nat. Bank of Bay City v. Union Trust Co., 244 U. S. 416 (37 Sup. Ct. 734, 61 L. ed. 1233); First Nat. Bank in St. Louis v. Missouri, 263 U. S. 640 (44 Sup. Ct. 213, 68 L. ed. 486).

■ The bank involved is an instrumentality of the Federal Government, being chartered under Federal law. The petitioner, as a stockholder, seeks his relief against the bank, which is located in this State, upon an allegation that it is undertaking to

act beyond the scope of its charter powers. If the Federal courts have exclusive jurisdiction, the State courts should be just as careful to respect the jurisdiction of the Federal courts as they should be careful to preserve their own. On this question, opposing counsel have cited numerous decisions in support of their respective positions. While we have read and considered carefully the decisions cited, we believe that Congress has answered this question in favor of the jurisdiction of the State courts. 12 U. S. C. A. 442, § 94 provides: "Actions and proceedings against any association under this chapter [National Banking Act] may be had in any district or territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases." Excepting actions by the United States for any of its officers or agents against a banking association, or suits by such banking associations against the Comptroller of the Currency or his receiver, Congress has specifically provided that national banking associations shall be deemed citizens of the States in which they are respectively located. 28 U. S. C. A. 241, § 1348. Certainly, State courts have jurisdiction of suits against its citizens unless jurisdiction has been assumed exclusively by the Federal courts.

Thus, it is clear to us that Congress has expressly given the State courts jurisdiction. The wisdom of the Federal law in thus subjecting the national bank to the jurisdiction of the State court is emphatically underlined by the facts in this case. Congress, by 12 U. S. C. A. 129, § 36, made the right of the national bank to establish branch banks entirely dependent upon the existence of a State law. It is there provided: "A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: . . . (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State

banks." The State law upon which the bank relies is attacked upon the grounds that it offends, not the Federal, but the State Constitution. A Georgia law that does not offend the Federal Constitution or Federal laws can be declared violative of the State Constitution and consequently void *only* by the courts of Georgia. Should the Federal courts hold that the law here attacked is void as violating the State Constitution, the State court would not be bound thereby, and a decision of the State court upholding such a law as not offending the State Constitution would render it a perfectly valid law. The trial court erred in ruling that it was without jurisdiction.

■ The last sentence of sec. 3 of the act of 1956, supra, provides: "Also in municipalities now having branches of a bank with a holding company relation, such banks may make branches of existing holding company banks; and in the future in cities of over 80,000 population, according to the 1950 or any subsequent census, now having branches of a bank, present branches will have the same privilege of additional branches as permitted to other banks." We are of the opinion that this is a special law and violative of art. 1, sec. 4, par. 1 of the Constitution of Georgia (Code, Ann., § 2-401), which provides that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law."

The general law of 1927 (Ga. L. 1927, p. 195) prohibited the establishment of new or additional branch banks after the effective date of the act. This law was effective in every city in the State and applicable to all banks, whether they were banks with a holding-company relation or branches of such banks. Sec. 3 of the act of 1956, supra, applies only (a) to municipalities that on February 27, 1956, had branches of a bank with a holding-company relation, such banks being given the right to make other branches of existing holding-company banks; and (b) to cities which, in the future, attained a population of over 80,000 according to the 1950 or any subsequent census that on February 27, 1956, had branches of any bank, such branches being granted the privilege of making additional branches. Under this act, no bank could establish a branch bank in any city of less than 80,000

population unless, at the time of the passage of the act, it was a bank with a holding-company relation. In other words, if the X bank in a city of 10,000 population did not have a holding-company relationship at the time of the act's passage, it could not establish a branch in that city; whereas, if the Z bank in the same city was a branch of a bank with a holding-company relation at the time the act was passed, it could "make branches of existing holding-company banks." The provision as to cities of over 80,000 population applies only to banks which, at the time of the passage of the act, had an existing branch bank. It thus seems clear that the act does not operate generally or uniformly throughout the State. The act can operate only upon a limited class of banks that had a status fixed at the time of the passage of the act, and it makes no provision for banks not having such status at the time the act was passed to come under the provisions of the act in the future. The classification for the purpose of legislation as to existing banks—those having branches of a bank with a holding-company relation, and those in cities of over 80,000 population now having branches of a bank—has no reasonable relation to the purposes of the act declared in sec. 1, which states: "The maintenance of competitive services between banks has been found to be the best method of serving the public. There are dangers in the concentration of economic power through centralized control of banks. It is, therefore, held to be in the public interest to curtail such concentration of economic power by preventing the expansion of bank holding companies and similar organizations." The class is so circumscribed that the last sentence of sec. 3 of the act of 1956, supra, can apply only to those banks having branches in existence at the time of its passage, and thus, this portion of the act is a special and not a general law, and is therefore unconstitutional. See *Thomas* v. *Austin*, 103 *Ga.* 701 (30 S. E. 627); *Stewart* v. *Anderson*, 140 *Ga.* 31 (78 S. E. 457).

■ The trial court erred in sustaining the general demurrers and in dismissing the petition.

*Judgment reversed. All the Justices concur, except Duckworth, C. J., Candler and Hawkins, JJ., who dissent from the judgment of reversal and from all rulings except division 4 and the corresponding headnote.*

DUCKWORTH, Chief Justice, dissenting in part. That the State court had jurisdiction was originally held in this case in the opinion which I prepared for the then majority, and with the portion of the majority opinion and judgment so ruling I now concur. But I dissent from all other rulings of the majority.

■ Though admittedly there is conflict in our decisions as to when relief may be granted under the Declaratory Judgment statute there is no exception to the rule that, if one can not possibly be in doubt and uncertainty as to his rights, he may not obtain any relief under this statute. It is not possible for this petitioning minority stockholder to be in doubt but that his bank may establish branch banks where a State statute grants the same privilege to State banks. This fact is unmistakably expressed by the Federal law in these words: "if such establishment and operation are at the time authorized to State banks by the statute law of the State." The statute law of the State (Ga. L. 1956, p. 309, sec. 3) grants to State banks precisely what this national bank claims the right to do. Therefore, the petitioner could not be heard to deny that he was sure of what the law was and what it authorized his bank to do. The action of the Comptroller of the Currency in granting his permit to the bank to do what the law authorizes shows that he was not in doubt of its meaning. Indeed, this petitioner makes no claim that he is in doubt as to the meaning of the law. His asserted doubt arises because of his erroneous fear that, should the State statute be declared unconstitutional, the bank would lose what it has expended in the establishment of branch banks thereunder. Such groundless apprehension grows out of a misconception of the source of the bank's powers. That source is exclusively Federal. Not one particle of the rights and powers of this national bank is conferred by State statute. The State statute is merely a condition precedent to the enjoyment of powers conferred solely by the Federal statute. Do the majority maintain that, when the conditions precedent, including a permit by the Comptroller of the Currency to the establishment of branch banks, are present, and the bank enters upon the task of establishing such branch bank, any expenditures thus lawfully made could or would be lost if the condition precedent is later removed, either by a court

decision declaring the State law void or by legislative repeal? It would require complete lack of faith in the Constitution to seriously think private property could thus be squandered by government. I make the positive assertion that neither government, State or Federal, could force the bank to lose one cent it has thus expended. I think the majority should face up to and frankly answer this same question. If I am right—and no legal reason has yet been given for denying I am right—then this petitioner is neither in doubt nor uncertainty, nor can he or his bank lose one cent or forfeit any right by actions taken before the State law is declared void or repealed.

■ The general rule of law (11 Am. Jur. 748, Constitutional Law, § 111; 16 C. J. S. 226, Constitutional Law, § 76) as well as the uniform rulings of this court (*Harrell* v. *Cane Growers Co-op Assn.*, 160 *Ga.* 30, 45 (7), 126 S. E. 531; *Felton* v. *Bennett*, 163 *Ga.* 849, 137 S. E. 264; *Johnson* v. *Georgia-Carolina Retail Milk Producers Assn.*, 182 *Ga.* 695, 697, 186 S. E. 824; *Mulling* v. *Houlihan*, 205 *Ga.* 735, 55 S. E. 2d 150; *Kryder* v. *State*, 212 *Ga.* 272, 91 S. E. 2d 612), is that one not adversely affected by a law will not be allowed to challenge its constitutionality in the courts. A decision can not be rendered in this case without dealing with this rule, by either following it or violating it. The petitioning minority stockholder claims no wrong to himself except such as he erroneously fears will befall the bank when and if sec. 3 of Georgia Laws, 1956, p. 309, is held invalid, and he seeks a judgment declaring said section 3 of the statute unconstitutional, upon the ground that it specially benefits his corporation and offends the uniformity requirement of the State Constitution. He makes no claim that the statute injures him or his bank, but shows that it benefits them both. I am astounded that, with such a clear-cut case, the majority sees proper to ignore the foregoing applicable decisions and law, and proceed to rule that this petitioner is entitled to attack the law, and cite as authority for such ruling the Code section on rights of minority stockholders to prevent ultra vires acts by the corporation, and *Central R. Co.* v. *Collins*, 40 *Ga.* 582; *Cherokee Iron Co.* v. *Jones*, 52 *Ga.* 276; *Macon Gas Co.* v. *Richter*, 143 *Ga.* 397 (85 S. E. 112) ; and *South Western R. Co.* v. *Benton*, 206 *Ga.* 770 (58

S. E. 2d 905), none of which has the remotest bearing upon the constitutional question, but all deal with attempted violations of statutes by the corporation. Thus we have a ruling allowing a minority stockholder to challenge the constitutionality of a statute upon the sole ground that it confers special rights upon his corporation, in which he as a stockholder must inevitably share, despite the foregoing cited and countless other decisions holding he can not do so unless the law injures him; and to sustain such fallacious ruling, cases are cited that do not touch that question but hold that the corporation must act within the law. The total irrelevancy of the law cited by the majority to the question being decided illustrates just how illogically and unsoundly their conclusion is reached.

■ Any sound decision on the validity of the law under attack, which permits existing banks with a holding-company connection to become branch banks, and branch banks when and if the population limitations therein are met to establish other branch banks in the city where they are located, requires a keen awareness of the public policy of this State with reference to banks as evidenced by Title 13, Banks and Banking, of the Code. Here we find careful regulations, manifesting the State's desire to allow the people the convenience and benefits of banks, and exercising great caution to protect the customers of the banks, and limiting their establishments by prospects of success and whether or not the services are needed.

It must be conceded without question that the Constitution, art. 1, sec. 4, par. 1 (Code, Ann., § 2-401), forbids enactment of a special law the subject matter of which is covered by a general law. Also, as contended by counsel for the plaintiff, this court has held numerous acts void because they were special laws, and as cases so holding counsel cites *Lorentz* v. *Alexander*, 87 *Ga.* 444 (13 S. E. 632); *Thomas* v. *Austin*, 103 *Ga.* 701 (30 S. E. 627); *Futrell* v. *George*, 135 *Ga.* 265 (69 S. E. 182); *Worth County* v. *Crisp County*, 139 *Ga.* 117 (76 S. E. 747); *Stewart* v. *Anderson*, 140 *Ga.* 31 (78 S. E. 457); *Gibson* v. *Hood*, 185 *Ga.* 426 (195 S. E. 444); *Sumter County* v. *Allen*, 193 *Ga.* 171 (17 S. E. 2d 567); *Estes* v. *Jones*, 203 *Ga.* 686 (48 S. E. 2d 99); *Tift* v. *Bush*, 209 *Ga.* 769 (75 S. E. 2d 805); *Walden* v. *Owens*, 211

*Ga.* 884 (89 S. E. 2d 492). It must be also conceded that the legislature may, under the provision of the Constitution, make classifications, provided the basis of such classification relates to the objective of the legislation. *Sasser* v. *Martin,* 101 *Ga.* 447 (29 S. E. 278) ; *Union Sav. Bank & Trust Co.* v. *Dottenheim,* 107 *Ga.* 606 (34 S. E. 217) ; *Abbott* v. *Commrs. of Roads & Revenues of Fulton County,* 160 *Ga.* 657 (129 S. E. 38) ; *Rourke* v. *U. S. Fidelity &c. Co.,* 187 *Ga.* 636 (1 S. E. 2d 728). In the light of the foregoing legal principles, we examine the basis for the classification here complained of. The legislature by an act (Ga. L. 1919, p. 135) had expressly authorized banks to establish branches in the city in which they were located and "elsewhere." Then by an act (Ga. L. 1927, p. 195) it is provided that, "after this act takes effect no new or additional branch banks shall be established." The 1927 act authorized the continuous operation of already-established branch banks. Then, by two acts in 1929 (Ga. L. 1929, pp. 214, 215), banks in cities then or thereafter having a population of not less than 80,000 or more than 125,000 or having a population of not less than 200,000 may establish branch banks in the municipality in which their principal offices are located. Thereafter in 1956, another law was enacted (Ga. L. 1956, p. 309), which prohibited further establishment of banks with holding-company connections, but expressly allowing those already established according to law to continue. Thus the legislation on branch banking authorizes banks to establish branches in cities where the home bank is located when and if the population of those cities is not less than 200,000 and where the population is not less than 80,000 nor more than 125,000. And the 1956 act allows branch banks in cities other than those of the home bank existing at that time to continue in operation.

With this situation we have for determination if a reasonable basis existed for classifying branch banks that were established in conformity with the law, and allowed to continue by the 1956 act although the future establishment of other such branch banks is forbidden by that act and the 1927 act cited above. Would it have been constitutional to have destroyed such lawful banks by the 1956 act? I think not. Then, since they were expressly allowed to continue, can it be seriously contended that they

should have been rendered unable to serve the convenience of their customers, or meet the competition of other banks which, under the two 1929 acts above referred to, can lawfully establish additional branch banks in cities defined by population which is the method of identification used in sec. 3 of the 1956 act, here attacked? It would have been better for the branch banks to have simply been wiped out by the 1956 act, thus making their demise less painful than to have allowed them to continue under circumstances rendering their success impossible and subjecting them to the excruciating slow death by strangulation and starvation. Either treatment would have constituted an abandonment of the public policy of the State concerning banking as exemplified by the law establishing the Banking Department and empowering it to seek solvency and success in all banks.

Coming now to the basis upon which sec. 3 classifies, I find the population part obviously related and pertinent to the number of banks. Also, the branch banks constitute all of a class and their success depends upon their ability to meet competition and serve the convenience of their customers. Therefore it can not be said that the relevant facts do not make the classification reasonable, since a classification is valid if it relates to the subject matter of the legislation and is not unreasonable or arbitrary. *Sasser* v. *Martin,* 101 *Ga.* 447, supra; *Aetna Insurance Co.* v. *Brigham,* 120 *Ga.* 925 (48 S. E. 348); *Georgia S. & F. R. Co.* v. *Adkins,* 156 *Ga.* 826 (120 S. E. 610); *City of Macon* v. *Samples,* 167 *Ga.* 150 (145 S. E. 57); *Felton* v. *McArthur,* 173 *Ga.* 465 (160 S. E. 419); *Family Finance Co.* v. *Allman,* 174 *Ga.* 467 (163 S. E. 143); *Rourke* v. *U. S. Fidelity & Guaranty Co.,* 187 *Ga.* 636, supra.

The provision, "in the future in cities of over 80,000 population, according to the 1950 or any subsequent census," will include a census taken by the Superintendent of Banks or others if correct and is not limited to the decennial census taken by the United States Government. This clause relating to population is in accord with the rulings in *Sumter County* v. *Allen,* 193 *Ga.* 171, supra; *Estes* v. *Jones,* 203 *Ga.* 686, supra; *Tift* v. *Bush,* 209 *Ga.* 769, supra; *Walden* v. *Owens,* 211 *Ga.* 884, supra, which hold that such classification must open to let in and also to let out.

Only when the two conditions are met, can the branches referred to be established, i. e., (1) branches existing at the date of the enactment of the law, and (2) when and only when the population of the city in which such branch is located is over 80,000. No such branch can be established before the population is over 80,000 and none can be established when the population ceases to be 80,000. Of course, those established while the population is over 80,000 would continue to exist lawfully when the population declined below 80,000. Furthermore, the only period in which this portion of the act is operative is when branch banks are "permitted to other banks." This merely places this classification of branch banks on precisely the same competitive level and equality with all other banks throughout the State. In the event no additional branch banks are permitted to other banks in Georgia, then no additional branches will be allowed under this section of the act.

Branches of a bank with a holding-company relation may make branches of existing holding-company banks, irrespective of population. I construe this to mean simply that existing holding-company banks may be made branches of a bank with a holding-company relation. This establishes no new banks, but merely authorizes changing the name and organization of existing banks of a holding company to branches of a bank with a holding-company relation.

Having thus classified in conformity with law, the uniformity requirement of the Constitution (art. 1, sec. 4, par. 1) is satisfied when it operates uniformly upon those within that class. *Union Sav. Bank & Trust Co.* v. *Dottenheim*, 107 *Ga.* 606 (2), supra; *McGinnis* v. *Ragsdale*, 116 *Ga.* 245 (42 S. E. 492). There is no question but that such uniformity is provided for all in the class here. From what has been said it follows that sec. 3 of the 1956 act above cited is not a special law, and does not offend art. 1, sec. 4, par. 1 of the Constitution. Therefore it required no advertisement. There is neither a plurality of subject matter in the act nor a denial of equal protection required by the Constitution of the State and the 14th Amendment of the Constitution of the United States. It follows that the constitutional attacks on sec. 3 of the 1956 act cited above are without merit. Further-

more, since petitioner's entire case depends upon his constitutional attacks being sustained, his petition alleges no cause of action.

For the reasons stated in this dissent, it is my opinion that the court has jurisdiction, but did not err in sustaining the general demurrers to the petition, which (a) aver that the petition fails to allege insecurity and uncertainty entitling the petitioner to a declaratory judgment; and (b) even so, the statute is not subject to the constitutional attacks made. I am authorized to state that Mr. Justice Candler and Mr. Justice Hawkins concur in this dissent.